[Nos. 2544-6-III; 3403-8-III. Division Three. March 18, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. PHILLIP LEE THEROFF, *Appellant.*

*Byron G. Powell* and *Wallace, Powell & Anderson,* for appellant.

*C. J. Rabideau, Prosecuting Attorney,* for respondent.

McINTURFF, J.—The defendant, Phillip Lee Theroff, appeals his conviction for second–degree felony–murder and the sentence he received under the enhanced penalty provisions of RCW 9.41.025 and RCW 9.95.040.

On October 30, 1976, Mr. Theroff encountered two hunters, Steve and Glenn Carpenter, trespassing upon his farm in Franklin County. A heated argument ensued resulting in the death of Glenn Carpenter and the wounding of Mr. Theroff.

The sequence of events is disputed. Steve Carpenter testified as follows: The two brothers were "road hunting" when they spotted a pheasant off to the side of the road. In disregard of posted "No Trespassing" signs, they drove onto the defendant's property, stopping alongside a drainage ditch. In pursuit of the game, they crossed the ditch, firing several shots in the direction of the fleeing pheasant. When the pheasant gave the appearance of being wounded, Steve directed his brother to return to the car and drive back to the county road while he retrieved their prize.

As Glenn returned to the car, Mr. Theroff arrived on the scene, honking the horn of his pickup truck. Steve was several yards out into the field when he observed his brother and Mr. Theroff apparently engaged in a heated discussion. As Steve began walking toward the car, he observed Mr. Theroff raise and point his shotgun at Glenn, who was unarmed and seated in the car. As he came nearer, Mr. Theroff directed Steve to drop his gun or he would shoot Glenn. Steve continued his approach when Mr. Theroff sounded a second warning, counted to three and then shot Glenn Carpenter from a distance of 2 to 3 feet. As Mr. Theroff turned to leave, Steve "marked" the defendant by shooting him in the leg. Mr. Theroff then returned to his truck and drove off. In a vain attempt to save his brother's life, Steve drove to a nearby farm in search of help, but his brother had died almost instantly from the gunshot wound.

Mr. Theroff, on the other hand, claimed the shooting was accidental. As he was standing next to the car, with his shotgun cradled in his left arm, he observed Steve

approaching from the other side of the ditch. At the direction of Glenn, who had yelled, "Shoot the S.O.B.", Steve shot Mr. Theroff in the leg. Thereafter, Mr. Theroff said: "I felt like my hands got real stiff, and I don't know, I felt my gun hit something and I felt it go off. At this time, I don't know whether I—but I knew it shook me . . . I thought, 'Oh my God, did my gun when it went off kill him?'"

Following a jury trial, Mr. Theroff was found guilty of second–degree felony–murder together with special findings that he was armed with a deadly weapon and a firearm at the time of the commission of the crime charged.

On appeal, Mr. Theroff first contends there was insufficient evidence to submit the case to the jury or to support the verdict.

■ A challenge to the sufficiency of the evidence admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom. The evidence is interpreted most strongly against the defendant and in a light most favorable to the State. Whether there is evidence legally sufficient to go to the jury is a question of law for the courts; but, when there is substantial evidence, and when that evidence is conflicting or is of such a character that reasonable minds may differ, it is the function and province of the jury to weigh the evidence, to determine the credibility of the witnesses, and to decide the disputed questions of fact.[1]

Here, the State adduced sufficient evidence for the jury to believe that the defendant knowingly pointed his shotgun at Glenn Carpenter in a threatening manner and that a homicide occurred in consequence of that act. Hence, there was sufficient evidence to find the defendant guilty of second–degree felony–murder since a second–degree assault which results in death becomes murder in the second

---

[1]*State v. Young*, 89 Wn.2d 613, 618, 574 P.2d 1171 (1978); *State v. Thompson*, 88 Wn.2d 518, 525–26, 564 P.2d 315 (1977); *State v. Holbrook*, 66 Wn.2d 278, 279, 401 P.2d 971 (1965); *State v. Reynolds*, 51 Wn.2d 830, 833, 322 P.2d 356 (1958); *State v. Fateley*, 18 Wn. App. 99, 102–03, 566 P.2d 959 (1977).

degree. *See* RCW 9A.32.050(1)(b) and RCW 9A.36–.020(1)(c).[2]

■ Next, Mr. Theroff argues for the application of the merger doctrine when second–degree assault is the underlying felony in a charge of second–degree felony–murder. Our Supreme Court, however, recently declared:

> we are now firmly convinced that adoption of the merger doctrine is not compelled either by principles of sound statutory construction or by the state or federal constitutions, and that adoption of the doctrine by this court would be an unwarranted and insupportable invasion of the legislative function in defining crimes. We therefore reaffirm this court's refusal to apply the doctrine of merger to the crime of felony–murder in this state.

*State v. Wanrow,* 91 Wn.2d 301, 303, 588 P.2d 1320 (1978); *see also State v. Safford,* 24 Wn. App. 783, 604 P.2d 980 (1979). Mr. Theroff's principal objections to the felony–murder rule were answered by *State v. Wanrow,* and his remaining objections do not convince this court of its ability to overrule the Supreme Court.

Mr. Theroff also raises an equal protection challenge to the felony–murder rule. He argues the equal protection guaranty is violated when separate crimes, in this case, second–degree felony–murder, based upon a second–degree assault and first–degree manslaughter, have the same elements but result in the imposition of different penalties.

---

[2]RCW 9A.32.050:

"(1) A person is guilty of murder in the second degree when:

". . .

"(b) He commits or attempts to commit any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants;"

RCW 9A.36.020:

"(1) Every person who, under circumstances not amounting to assault in the first degree shall be guilty of assault in the second degree when he:

". . .

"(c) Shall knowingly assault another with a weapon or other instrument or thing likely to produce bodily harm;"

██ In *State v. Wanrow*, the court held that second–degree felony–murder was a crime separate and distinct from the crime of manslaughter. "No constitutional defect exists when the crimes which the prosecutor has discretion to charge have different elements." *State v. Wanrow, supra* at 312; *accord, State v. Parr*, 93 Wn.2d 95, 606 P.2d 263 (1980).[3]

Mr. Theroff next assigns error to instructions Nos. 15 and 17, which read as follows:

Instruction No. 15:

> You are instructed that any *unlawful act of a person* which is reasonably calculated to lead to an affray or deadly conflict, and which provokes the difficulty, is an act of aggression or provocation which deprives him of the right of self–defense, although he does not strike the first blow.

Instruction No. 17:

> You are instructed that the use of a deadly weapon by a private party to eject a *non–violent trespasser* is not a justifiable use of force.

Mr. Theroff contends these instructions, particularly the italicized portions, constituted a comment on the evidence by the trial judge in violation of article 4, section 16 of the Washington State Constitution.[4]

██ An instruction which contains an accurate statement of the law is not a comment on the evidence. *State v.*

---

[3]Under RCW 9A.32.060(1)(a), a person is guilty of manslaughter when he recklessly causes the death of another. A person acts recklessly when he knows of and disregards a substantial risk that a wrongful act may occur and his disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation. RCW 9A.08.010. Under RCW 9A.32-.050(1)(b), a person is guilty of second–degree felony–murder when he causes the death of a person in the course of and in furtherance of or in immediate flight from certain felonies, here, second–degree assault, RCW 9A.36.020(1)(c)—a knowing assault upon another with a weapon or other instrument or thing likely to produce bodily harm.

[4]Const. art. 4, § 16:

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law."

*Foster,* 91 Wn.2d 466, 481, 589 P.2d 789 (1979). Here, instruction No. 15 accurately states the law of self-defense as it relates to aggression or provocation of an affray. *See State v. Craig,* 82 Wn.2d 777, 783–84, 514 P.2d 151 (1973). Instruction No. 17 is also a correct statement of the law with respect to a private party's use of a deadly weapon to eject a nonviolent trespasser. *See State v. Murphy,* 7 Wn. App. 505, 514, 500 P.2d 1276 (1972). Mr. Theroff's remaining objections to the instructions were not raised at the time of trial and will not be considered on appeal. *Reed v. Pennwalt Corp.,* 93 Wn.2d 5, 6–7, 604 P.2d 164 (1979).

Next, Mr. Theroff challenges the validity of his sentence on due process grounds, contending the amended information did not give proper notice of the State's intention to seek enhanced penalties under RCW 9.41.025 and/or 9.95.040.[5] On February 18, 1977, Mr. Theroff was charged by information with two alternate counts of first–degree murder. On the same day the State filed a separate document entitled "Notice" in which he was advised of the State's intent to seek enhanced penalties for being armed

---

[5]RCW 9.41.025:

"Any person who shall commit or attempt to commit any felony, or any misdemeanor or gross misdemeanor categorized herein as inherently dangerous, while armed with, or in the possession of any *firearm,* shall upon conviction, in addition to the penalty provided by statute for the crime committed without use or possession of a firearm, be imprisoned as herein provided:

"(1) For the first offense the offender shall be guilty of a felony and the court shall impose a sentence of not less than five years, which sentence shall not be suspended or deferred;" (Italics ours.)

RCW 9.95.040:

"Within six months after the admission of a convicted person to the penitentiary, reformatory, or such other state penal institution as may hereafter be established, the board of prison terms and paroles shall fix the duration of his confinement. The term of imprisonments so fixed shall not exceed the maximum provided by law for the offense of which he was convicted or the maximum fixed by the court where the law does not provide for a maximum term.

"The following limitations are placed on the board of prison terms and paroles with regard to fixing the duration of confinement in certain cases, notwithstanding any provisions of law specifying a lesser sentence, to wit:

"(1) For a person not previously convicted of a felony but armed with a *deadly weapon* at the time of the commission of his offense, the duration of confinement shall not be fixed at less than five years." (Italics ours.)

with a deadly weapon and/or firearm. Subsequently, an amended information was filed, adding the charge of second-degree felony–murder—second-degree assault with a "shotgun" resulting in a homicide. Mr. Theroff argues the filing of the amended information constituted an abandonment of the original information and with it the separate "Notice", citing *State v. Kinard,* 21 Wn. App. 587, 589, 585 P.2d 836 (1978). Since the amended information did not set forth the enhanced penalty provision, he contends the 5-year mandatory minimum sentence violates due process as a matter of law. We disagree.

In *State v. Frazier,* 81 Wn.2d 628, 633, 635, 503 P.2d 1073 (1972), the court said:

> Where a factor aggravates an offense and causes the defendant to be subject to a greater punishment than would otherwise be imposed, due process requires that the issue of whether that factor is present, must be presented to the jury upon proper allegations and a verdict thereon rendered before the court can impose the harsher penalty. *State v. Nass,* 76 Wn.2d 368, 456 P.2d 347 (1969). . . .
>
> . . .
>
> The reasoning of *State v. Nass,* 76 Wn.2d 368, 456 P.2d 347 (1969) requires that where a greater punishment will be imposed as provided for in RCW 9.41-.025(1), notice of this must be set forth in the information. This is particularly true where, as is the case here, there is a special penalty for the offense added in another and apparently unrelated section of the criminal code and removed from the sentencing provision of the assault statute.

■ *State v. Cosner,* 85 Wn.2d 45, 50, 530 P.2d 317 (1975) reaffirmed this rule, but declined a rigid application because the evidence disclosed the defendant's knowledge or awareness of the potentially greater punishment. Likewise, the circumstances here do not require nullification of the applicable mandatory minimum sentence. The separate document entitled "Notice" fully advised Mr. Theroff of the State's intention to seek a finding that he was armed with a firearm and deadly weapon as per RCW 9.41.025 and

9.95.040. This document was never withdrawn and the evidence shows Mr. Theroff was not misled as to the State's intention despite the filing of an amended information.

At the conclusion of the trial, Mr. Theroff's attorney requested this instruction:

> You are instructed that if you convict the defendant of any of the crimes set out in these instructions and if you also make a special finding that the defendant was armed with a firearm during the commission of such crime, then the court must then additionally impose a sentence on the defendant of not less than 5 years in the penitentiary which cannot be suspended or deferred, as well as the sentence for any crime which you convict the defendant of.

After sentencing, Mr. Theroff's attorney mounted an impressive challenge to the constitutionality of the enhanced penalty statute. Conspicuously absent from this postsentencing motion, however, is a challenge to the adequacy of the amended information to notify Mr. Theroff that he would be subject to enhanced punishment.

As the court noted in *State v. Cosner, supra* at 51,

> compliance [with the due process notice requirement] should take the form of pleading by statutory language and citation of the statute or statutes upon which they [the prosecuting attorneys] are proceeding, *i.e.,* firearms and/or deadly weapons.

In this instance, the "Notice" alone may be insufficient, but with the additional factors stated above we are convinced Mr. Theroff had the notice required by the due process clause.[6] Despite argument to the contrary, it would "strain credulity" to suggest that Mr. Theroff was unaware of the

---

[6]The "Notice" filed February 18 stated, in part:

"Comes now C. J. RABIDEAU Prosecuting Attorney for Franklin County, State of Washington, and by this Notice advises the defendant that plaintiff, in addition to the maximum penalty for each appropriate crime charged in the Information filed herein, will seek a finding that the defendant was:

"(a) Armed with a firearm (RCW 9.41.025),

"(1) first offense; or,

"(2) second offense; or,

"(3) third or subsequent offense; and, or

State's intention to seek the mandatory minimum sentence. *State v. Cosner, supra.*

■ Mr. Theroff's objection to the applicability of the firearm enhancement statute to the crime of second–degree assault was recently rejected in *State v. Foster, supra* at 477:

> Since the second–degree assault statute, unlike the first–degree robbery statute in *Workman,* [90 Wn.2d 443, 584 P.2d 382 (1978)] calls for no necessary proof of possession of a deadly weapon as an element of the crime, we find that the application of the firearm enhancement statute in this case was proper.

*See also State v. Miles,* 24 Wn. App. 430, 436, 601 P.2d 971 (1979).

■ *State v. Foster, supra* at 478, also rejects Mr. Theroff's double jeopardy challenge to the firearm enhancement statute:

> This court has upheld the constitutionality of another enhanced penalty statute, RCW 9.92.090, in ruling that the enhanced penalty for habitual criminals does not violate a defendant's rights under the double jeopardy clause of the Fifth Amendment. . . . We take a similar view of the enhanced penalty scheme provided for in RCW 9.41.025. We therefore deny appellant's double jeopardy claim.

(Citations omitted.)

Judgment of the Superior Court is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied April 11, 1980.

Review granted by Supreme Court June 20, 1980.

---

"(b) Armed with a deadly weapon (RCW 9.95.040) contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Washington."