[No. 5625-9-II.  Division Two.  March 4, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. NORMAN V. HOBART, *Appellant.*

---

*Norman V. Hobart,* pro se, and *Daniel Tighe,* for appellant.

*Curtis M. Janhunen, Prosecuting Attorney,* and *Michael G. Spencer, Deputy,* for respondent.

PETRICH, C.J.—Defendant appeals his conviction of first degree arson. At issue is whether defendant's waiver of his right to remain silent was knowingly and intelligently made; whether the State presented a prima facie case; whether evidence of defendant's mental capacity was admissible to cast doubt on the credibility and voluntariness of his confession; and, whether he was entitled to lesser included offense instructions. Finding no error below, we affirm.

On the night of February 9, 1981, a fire was discovered on the indoor stairwell of the Harmony Apartments in Aberdeen. The fire chief who responded to the fire later testified that the cause was definitely arson. At the approx-

imate time the fire was discovered, the tenants heard the sound of breaking glass; this later led to the discovery of a broken electrical meter. Also discovered taped to the apartment's front door was a racially hostile note, apparently directed at a black tenant.

In the course of investigating two similar notes found tacked to buildings in Aberdeen, the police picked up defendant for questioning on February 16. The court found that prior to the questioning, defendant was fully advised of his constitutional rights, that he acknowledged his understanding of such rights, that he waived his constitutional rights in talking with the officers, and that the officers scrupulously honored his request for counsel throughout the interrogation.[1] Defendant soon admitted writing the note found at the apartment's door and breaking a PUD meter there. However, he denied setting the fire and blamed that on other individuals.

On the afternoon of February 17, the police accompanied defendant to his mother's house where he had been staying. There they discovered paper of the same stock used in the note found at the Harmony Apartments. While the police were thus engaged in their search, defendant's mother and brother urged him to be truthful. Upon returning to the police station, defendant admitted starting the fire, and shortly thereafter he signed a written confession.

After a CrR 3.5 hearing, defendant was tried before a jury on a first degree arson charge. He now appeals his conviction.

Defendant first claims that the court erred in finding that he intelligently and knowingly waived his constitutional right to remain silent. He concedes that the police informed him of his *Miranda* rights and that he signed a written confession which stated that it could be later used against him. His only contention, therefore, is that his lack of intelligence prevented him from giving a waiver which

---

[1]Defendant assigns no error to these findings made pursuant to a CrR 3.5 hearing.

was truly voluntary.

A waiver of constitutional rights, when answering questions of police, must be made knowingly and voluntarily; the test is whether defendant knew that he had the right to remain silent, not whether he understood the precise nature of the risks of talking. *State v. Aiken,* 72 Wn.2d 306, 434 P.2d 10 (1967). Here, the court heard defendant admit that he was 20 years old, had dropped out of school in the ninth grade, and was presently unemployed. Defendant also admitted that he understood he could have stopped giving a statement at any time. Additionally, the police testified that after informing defendant of his *Miranda* rights, he acknowledged that he understood them. Based on these facts, we find there is substantial evidence upon which the trial court could find by a preponderance of the evidence that the confession was given voluntarily and that the waiver was made knowingly and intelligently. *See State v. Snook,* 18 Wn. App. 339, 567 P.2d 687 (1977).

Defendant next argues that because the State failed to prove a prima facie case, the court erred in failing to grant his motion to dismiss at the close of the State's case. At that time, of course, the trial court was required to assume the truth of the State's evidence and view it most strongly against the defendant and in a light most favorable to the State. *State v. Bishop,* 90 Wn.2d 185, 580 P.2d 259 (1978). We need not address this because defendant did not rest, thus the challenge is to *all* the evidence. Defendant's sole argument is that the fire chief's testimony—that he found no evidence of an accelerant—was in conflict with defendant's testimony that he had used an accelerant. This is hardly an inconsistency. In light of the evidence already mentioned, there is no merit to this claim, and we find no error.

Defendant's third argument is that the court erred by refusing to allow testimony as to his low I.Q. At the start of defendant's case, counsel put on the stand a local school psychologist who testified that defendant had been in the school's special education program for 8 years before drop-

ping out. The State then objected to testimony as to I.Q. tests taken by defendant. After the jury was excused, counsel argued to the court that he wanted the jury to consider defendant's low I.Q. when it would later evaluate the credibility and the voluntariness of his confession. However, when the court asked counsel what testimony he intended to elicit from the psychologist, he stated that "[t]he ultimate testimony would be that the defendant has a low intellectual capacity. That's it." Because defendant proffered no evidence that would link mental capacity to the issues of credibility and voluntariness at the time of confession, the court did not abuse its discretion in refusing to admit the psychologist's further testimony. Moreover, even if the court was in error, it would be harmless because the jury had already heard testimony of defendant's low mental capacity.

■ Finally, defendant argues that the court erred by not including instructions on the lesser offenses of second degree arson and first and second degree reckless burning. Lesser included offense instructions must be given if each element of the lesser offense is a necessary element of the offense charged and there is evidence to support an inference that the lesser crime was committed. *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978).

RCW 9A.48.020 defines first degree arson:

(1) A person is guilty of arson in the first degree if he knowingly and maliciously:

(a) Causes a fire or explosion which is manifestly dangerous to any human life, including firemen; or

(b) Causes a fire or explosion which damages a dwelling; or

(c) Causes a fire or explosion in any building in which there shall be at the time a human being who is not a participant in the crime; or

(d) Causes a fire or explosion on property valued at ten thousand dollars or more with intent to collect insurance proceeds.

(2) Arson in the first degree is a class A felony.

■ One may cause a fire in a building in which there is

a human being, and yet not cause *damage* to a building, which is a necessary element of second degree arson. RCW 9A.48.030.

We next note that for purposes of RCW 9A.48, a different meaning is plainly intended for "building" and "dwelling." *See State v. Lunstrum*, 19 Wn. App. 597, 576 P.2d 453 (1978). First degree reckless burning requires damage to a building, RCW 9A.48.040, while first degree arson requires damage to a dwelling. Second degree reckless burning requires that one place a building in danger of damage, RCW 9A.48.050, whereas first degree arson requires human life to be placed in danger. *See also State v. Simmons*, 28 Wn. App. 243, 622 P.2d 866 (1980) (malicious mischief not lesser included offense of first degree arson). Thus, there is no error.

Having read defendant's pro se assignments of error and finding them to be without merit, we therefore affirm.

PETRIE and REED, JJ., concur.

Reconsideration denied March 25, 1983.

Review denied by Supreme Court May 24, 1983.