[No. 5473-0-III.   Division Three.   May 8, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. CESILIO
L. ALFEREZ, *Appellant*.

"Congress shall make no law respecting an establishment of religion, or pro-
hibiting the free exercise thereof; . . ."

*Cesilio L. Alferez,* pro se, and *Craig Davenport,* for appellant (appointed counsel for appeal).

*Arthur R. Eggers, Prosecuting Attorney,* and *Donald W. Schacht, Deputy,* for respondent.

THOMPSON, J.—Cesilio Alferez appeals his conviction of second degree assault. RCW 9A.36.020. We affirm the conviction but remand for resentencing.

On July 16, 1982, Cesilio Alferez went to the Walla Walla Farm Labor Camp to visit friends. He testified that as he was leaving in his pickup, at about 8:30 or 9:30 p.m., a number of individuals surrounded his truck. Although he was not frightened, he reached for his shotgun to scare off the men. He did not intend to shoot. The men grabbed for the gun and he became concerned for his safety. Then the weapon was discharged. Mr. Alferez left the scene in his vehicle.

Natividad Pena, a resident of the labor camp, was shot in the back. He testified he did not approach Mr. Alferez'

truck.

Later that evening, Mr. Alferez was arrested for driving while intoxicated. He was read his *Miranda* rights and he indicated he understood them. He appeared to understand commands given to him in English.

Mr. Alferez was taken to the sheriff's office where he remained in custody. At midnight a Breathalyzer revealed a reading of .12 percent. At about 2:20 a.m. the following morning, he was again read his *Miranda* rights. Mr. Alferez agreed to give a statement at that time, but the interview was terminated when it appeared to the testifying officers that he was not telling the truth. (He assertedly continuously changed his story throughout the interview.) Two minutes later, Mr. Alferez requested another interview at which time he admitted shooting Mr. Pena.

Mr. Alferez was charged with assault in the first degree and was arraigned on a plea of not guilty. An amended information was filed adding the violation of RCW 9.41.025 (possession of a firearm) and RCW 9.95.040 (armed with a deadly weapon).[1] The jury returned a special verdict finding Mr. Alferez in possession of a firearm at the time of the crime.

Error is assigned first to the trial court's failure to suppress Mr. Alferez' custodial statement as involuntarily made. Credibility and the weight to be accorded testimony are within the discretion of the trial judge. *In re Watson,* 25 Wn. App. 508, 610 P.2d 367 (1979). A waiver of *Miranda* rights to counsel and to silence must be made knowingly and voluntarily. *State v. Hobart,* 34 Wn. App. 187, 659 P.2d 557 (1983). Intoxication alone does not necessarily render a defendant's custodial statements involuntary. *State v. Turner,* 31 Wn. App. 843, 644 P.2d 1224 (1982). Mr. Alferez testified that no one made promises or forced him to speak to the officers. He further testified he was fluent in English as well as Spanish. The officers testified that when Mr.

---

[1] The record does not reflect service of this amended information upon defendant, but it is undisputed that defense counsel received a copy.

Alferez was stopped, he functioned well, and followed orders given in English. Hours later he again was read his *Miranda* rights and did not request an attorney or an interpreter. Mr. Alferez later asked for a second interview and recalled dictating his statement to the officers because he did not write well in English. He said he read the statement, but "maybe didn't read it as carefully as [he] should have". Substantial evidence exists upon which the trial court could find by a preponderance that the statement was given "voluntarily" and the waiver was made "knowingly and intelligently". *State v. Hobart, supra* at 190 (citing *State v. Aiken,* 72 Wn.2d 306, 434 P.2d 10 (1967)).

Mr. Alferez next assigns error to the failure to instruct the jury on self–defense. To properly raise the issue, there need be sufficient evidence admitted which tends to establish the assault was in self–defense. *State v. McCullum,* 98 Wn.2d 484, 488, 656 P.2d 1064 (1983). In determining sufficiency, the trial court must apply a subjective standard, viewing the evidence from the defendant's point of view. *McCullum,* at 488–89. Mr. Alferez testified he was not in fear at the time he pulled his gun out and its discharge was accidental. Consequently, he was not entitled to a self–defense instruction.[2]

Mr. Alferez, in his pro se brief, separately raises the question of the sequestration of witnesses. "Questions concerning the exclusion of witnesses and the violation of that rule are within the broad discretion of the trial court and will not be disturbed, absent manifest abuse of discretion." *State v. Schapiro,* 28 Wn. App. 860, 867, 626 P.2d 546 (1981). Mr. Alferez made a motion to exclude witnesses at the beginning of trial and his motion was granted. Other than a statement in his pro se brief, Mr. Alferez presents nothing to substantiate his claim that witnesses were not

---

[2]Having determined insufficiency of evidence to raise entitlement to an instruction, we need not analyze whether an instruction, if given, must incorporate burden of proof language. *McCullum,* 98 Wn.2d at 496–500; *State v. Acosta,* 34 Wn. App. 387, 389–90, 661 P.2d 602, *review granted,* 100 Wn.2d 1001 (1983).

properly sequestered. This court has no way of knowing whether the people in the courtroom were actually called as witnesses, whether they were allowed in the courtroom at all times or only after testimony, or whether they were State witnesses allowed to remain to assist the prosecutor within the discretion of the court. The record indicates the court enforced the rule during the trial in that in one instance the court ruled that a witness excused subject to recall should remain out of the courtroom. There is no showing that the court abused its discretion either in failing to grant a motion for sequestration or in failing to enforce the rule thereafter. Mr. Alferez' objection is without merit.

Mr. Alferez' pro se brief also asserts the court erred in failing to instruct on a lesser included offense of third degree assault. The defense did not propose an instruction on a lesser included offense and it is not error to fail to instruct on a lesser included offense when no request for such an instruction is made. *State v. Turner, supra; State v. Walker,* 13 Wn. App. 545, 536 P.2d 657 (1975); *State v. Mayner,* 4 Wn. App. 549, 483 P.2d 151 (1971). Mr. Alferez also argues that his identification at the scene of the arrest was improper. An officer took Mrs. Pena to the arrest scene to make an identification. No objection was made at trial to this field identification procedure. Objection is made now since Mr. Alferez contends it "contributed to the confession".

The reviewing court must balance the witness' reliability against the harm of the suggestiveness by evaluating the totality of the circumstances. *State v. Cook,* 31 Wn. App. 165, 172, 639 P.2d 863 (1982).[3]

Here, it is obvious Mrs. Pena had an opportunity to see her husband's assailant since she physically attacked

---

[3]The factors to be considered include (1) the opportunity of the witness to observe the defendant at the time of the crime, (2) the witness' "degree of attention", (3) the accuracy with which the witness earlier described the defendant, (4) "the level of certainty at the confrontation", and (5) the time lapse between the crime and confrontation. *Cook,* at 172 (citing *Manson v. Brathwaite,* 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243, 2253 (1977)).

him at the scene of the crime. She was unwavering in her identification and the time span between crime and confrontation was relatively short, a matter of hours. The identification was sufficiently reliable to outweigh possible suggestiveness. At any rate, the admission of Mrs. Pena's out-of-court identification, if error, was harmless since Mr. Alferez was positively identified by other eyewitnesses. *See State v. Johnson,* 100 Wn.2d 607, 621, 674 P.2d 145 (1983). Since the identification at the scene was proper, the fact that Mr. Alferez now contends the identification may have contributed to his decision to confess has no legal significance.

■ Next, Mr. Alferez pro se challenges the trial court's refusal to allow an instruction on self-defense contending this resulted in "ineffective assistance of counsel". The standard for evaluating the asserted lack of effectiveness of trial counsel as denying Mr. Alferez' due process rights is whether "'[a]fter considering the *entire record,* [it can] be said that the accused was [not] afforded an *effective representation* and a *fair* and *impartial* trial'." *State v. Renfro,* 96 Wn.2d 902, 909, 639 P.2d 737, *cert. denied,* 459 U.S. 842 (1982) (quoting *State v. Thomas,* 71 Wn.2d 470, 471, 429 P.2d 231 (1967)). Although Mr. Alferez' complaint is actually focused on the trial court rather than his defense attorney, nevertheless, we reviewed the entire record. We conclude Mr. Alferez was afforded effective representation and received a fair and impartial trial. *Renfro,* at 909. *See also State v. Sweet,* 36 Wn. App. 377, 384-85, 675 P.2d 1236 (1984).

Finally, Mr. Alferez, through his attorney, contends he was not given proper notice of the State's intention to seek enhanced penalties under either RCW 9.41.025 or 9.95.040 since he was never arraigned on the amended information nor informed of the amendment.

RCW 9.41.025 and 9.95.040 do not create a separate crime. *State v. Frazier,* 81 Wn.2d 628, 632, 503 P.2d 1073 (1972). The statutes take away the trial court's discretion in setting a minimum sentence. When the fact finder returns a

verdict with a special finding that the defendant used a "deadly weapon", the minimum sentence must be 5 years. The *Frazier* court concluded, at page 634, that since this enhanced penalty scheme takes away the court's "independent judgment" and compels imprisonment for a fixed minimum of time (*e.g.*, 5 years), procedural due process of the highest standard must be afforded the defendant. The court also stated that the due process clause required inclusion of this separate issue in the information and verdict form. The defendant must know all the possible consequences of pending charges and allegations at a time when he may consider alternatives to not guilty pleas. Once convicted, the defendant has no possibility of probation; therefore, it is not unusual for a defendant to plead guilty to the crime charged sans the enhanced penalty allegation so as to preserve the possibility of probation or a shorter minimum term. A decision to enter a plea of guilty to a lesser charge "is only one of the practical consequences that follow from receipt of notice at a time while alternative courses of action on [his] part are still available to [him]." *Frazier,* at 634. The appropriate remedy, where notice is a problem, is to affirm the conviction, but remand the case for resentencing. *Frazier,* at 635.

In *State v. Theroff,* 25 Wn. App. 590, 608 P.2d 1254 (1980) (*Theroff* I), the defendant was charged with two alternate counts of first degree murder. On the day the defendant was charged, the State filed a separate document entitled "Notice" advising defendant of the State's intent to seek enhanced penalties for commission of the crime with "a deadly weapon and/or firearm". *Theroff* I, at 597. Later, an amended information was filed, adding the charge of second degree felony murder and second degree assault with a "shotgun". *Theroff* I, at 597. The amended information did not set forth the enhanced penalty provision. The *Theroff* I court noted that no challenge to the sufficiency of the amendment was made to the trial court and the record

reflected that Mr. Theroff was not misled.[4] The Supreme Court, however, disagreed, stating resolutely that notice of intent must be set forth in the information. *State v. Theroff*, 95 Wn.2d 385, 392, 622 P.2d 1240 (1980) (*Theroff* II) (citing *State v. Cosner*, 85 Wn.2d 45, 530 P.2d 317 (1975) and *State v. Frazier, supra*).

■ Even though *Theroff* II has been criticized as exalting "form" over "substance" (*Theroff* II, at 393, Rosellini, J., concurring and dissenting), since Mr. Theroff and his attorney undisputedly had actual notice and were not misled or deceived, nonetheless, we are bound by the case's pronouncement. Here, Mr. Alferez entered his not guilty plea at arraignment on an information which did not contain the notice of intent to seek enhanced penalties. As the State admits in its brief, it was only after a guilty plea was not forthcoming that the amended information was sent to defense counsel. The record does not reflect that the amended information was ever served on Mr. Alferez and there is no evidence in the record that would indicate Mr. Alferez was either arraigned on the amended complaint or advised of the enhanced penalty provision. Counsel for the State argues that off–the–record discussions took place between the State and defense counsel. The State further argues that instructions 4, 6, and 7 make reference to being armed with a deadly weapon or firearm in defining the elements and terms used. Neither off–the–record discussions nor the inferences that may arise from the State's instructions 4, 6, and 7 meet that "[p]rocedural due process of the highest standard . . ." required in *Frazier,* at 634. This conclusion is reinforced by *Theroff* II, where even on–the–record discussions proving positively that Mr. Theroff was aware the State was seeking enhanced penalties did not

---

[4]Mr. Alferez' additional contention that the special penalty section should not be applied to a second degree assault conviction is without merit. *Theroff* I, citing *State v. Foster,* 91 Wn.2d 466, 477, 589 P.2d 789 (1979), makes it clear that application of a firearm enhancement statute to second degree assault, as a matter of statutory interpretation, is appropriate. *See also State v. Adlington–Kelly,* 95 Wn.2d 917, 631 P.2d 954 (1981).

suffice. As stated in *Frazier* and repeated in *Theroff* II, the notice that the State intends to seek enhanced penalties must come at a time when alternative choices are available. Here, the record not only does not demonstrate Mr. Alferez received the amended information, but no arraignment or discussion on the record would allow this court to conclude that Mr. Alferez was ever made aware of the State's intent at a time when meaningful alternatives were available. That Mr. Alferez was advised at his initial arraignment as to the maximum penalty and knew a firearm was involved in the incident does not satisfy the requirements set out in *Frazier* and subsequent cases.

Absence of arraignment alone does not rise to a due process violation. *State v. Anderson,* 12 Wn. App. 171, 528 P.2d 1003 (1974). The harm occurs when absence of arraignment results in failure to give the accused and his counsel sufficient notice and adequate opportunity to defend. *Garland v. Washington,* 232 U.S. 642, 58 L. Ed. 772, 34 S. Ct. 456, 457 (1914), *cited with approval in Anderson,* at 173.

Mr. Alferez' conviction of second degree assault is affirmed, but the case is remanded for resentencing.

MUNSON, C.J., and GREEN, J., concur.

Review denied by Supreme Court July 13, 1984.