[No. 6812-5-II. Division Two. May 10, 1985.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH C. SAMPSON, *Appellant.*

*Terry W. Oostenbrug,* for appellant (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Patrice E. Vlaming, Deputy,* for respondent.

REED, J.—Kenneth Sampson appeals a jury conviction of second degree assault committed while armed with a deadly weapon, alleging several instructional errors on the law of self–defense. We affirm the conviction.

A dispute over 9 cents led to the shooting of Bryant Conrad. Sometime between 8:30 and 9 p.m. on August 8, 1982, Conrad and a friend stopped for gas at Franko's Self Service Station near Bremerton. After filling his tank, Conrad proceeded into the gas station's office and handed the attendant, the defendant, $10, the exact amount he believed he owed. As Conrad stepped out the door, Sampson shouted that 9 more cents was owed. Conrad disagreed, but Sampson insisted. Believing they were "headed for trouble," Conrad suggested they go look at the pumps. Although the pump from which Conrad had obtained gas showed an amount due of $10, Sampson demanded that Conrad pay the 9 cents. An argument ensued. An elderly man then intervened, explaining to Sampson that he had pumped 9 cents worth of gas from a pump near Conrad's car. Sampson apparently disbelieved him and continued to demand the money from Conrad.

At this point, two different versions of the subsequent altercation emerge. According to Conrad, after some heated verbal exchanges, Sampson grabbed him twice. The second

time, Conrad pushed Sampson, who pulled a gun and aimed it at the ground. At the sight of the gun and Sampson's "big, serious stare," Conrad suggested they contact the police to resolve the dispute. In apparent agreement, they moved toward the office with Sampson keeping his gun at his side although Conrad testified he asked him at least three times to put it away. Once inside the gas station office, Sampson positioned himself against the cash register. With his gun at his side, he faced Conrad who was attempting to contact the police. Also present were Sampson's wife and another gas attendant, who were standing behind the cash register, and Conrad's friend. While Conrad placed the call, Sampson and Conrad began arguing again. Conrad testified that Sampson became "hostile" and grabbed his shirt near his neck. Conrad again requested Sampson to put the gun away, but Sampson refused. Conrad then pushed Sampson's chin "to get him back out of [his] face, . . ." when the gun discharged, hitting Conrad in the stomach. Sampson appeared shocked after the shooting according to Conrad. Testimony from the other attendant corroborated Conrad's description of the shooting.

Sampson's version of the incident is, of course, substantially different. Sampson acknowledged that he "loudly" insisted that Conrad pay the 9 cents because he saw Conrad obtain gas from two different pumps. Sampson testified, however, that out at the pumps, Conrad lunged for him twice and that he pulled a gun after the second attempt because Conrad appeared "erratic" and he believed Conrad's friend, who was standing near Conrad's car, "was there for reinforcement." Sampson admitted he kept his gun out while they walked toward the office and inside the office, but claimed Conrad never requested him to holster it. Sampson testified that he became "scared" when Conrad unexpectedly hung up the telephone before completing the call to the police, and approached him. Sampson described Conrad as "irrational" and appearing "drunk." Conrad then grabbed his beard and his throat with both hands. Sampson testified that "[t]hen the gun went off." He further testified

that he had "no conscious recollection of shooting Conrad," but did recall feeling "frightened" and "thinking [Conrad] was going to kill [him]." Sampson's wife also testified; she believed Sampson was defending himself from the hostility of an intoxicated individual. The jury disagreed and returned a conviction.

Sampson's assignments of error are directed to the trial court's instructions on self–defense. He first contends the trial court's instructions failed to inform the jury that the State bears the burden to prove the absence of self–defense. Sampson argues the trial court committed reversible error by refusing his elements instruction which would have required the State to prove beyond a reasonable doubt "[t]hat the force used by the defendant was unlawful and not necessary." (Proposed instruction 8).[1]

When self–defense properly is raised by a defendant in an assault prosecution, the State bears the ultimate burden of proof on self–defense. *State v. Acosta,* 101 Wn.2d 612, 683 P.2d 1069 (1984). That is, the State is obligated to prove beyond a reasonable doubt that the defendant's use of force was unlawful, wrongful or without justification or excuse. *Acosta,* 101 Wn.2d at 618, 623. The test for determining whether the court's instructions constituted error is "whether the jury . . . could understand from the instructions as a whole, that the State bears the burden of proof

---

[1]Sampson's proposed instruction 8 provided as follows:

"To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 8th day of August, 1982, the defendant knowingly:

　　"(a) assaulted Bryant Conrad with a weapon or other instrument or thing likely to produce bodily harm; or

　　"(b) inflicted grievous bodily harm upon Bryant Conrad with or without a weapon;

"(2) That the acts occurred in Kitsap County, Washington; and

"(3) That the force used by the defendant was unlawful and not necessary.

"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

"On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty."

on self–defense." *Acosta,* 101 Wn.2d at 622. Here, the trial court's instructions 3 and 7 told the jury that the State had to prove beyond a reasonable doubt that Sampson "assaulted" Bryant Conrad.[2] Instruction 5 defined "assault" as an act with "unlawful force,"[3] and instructions 15 and 16 defined the use of "lawful force."[4] These instruc-

---

[2]Instruction 7 provided as follows:

"To convict the defendant of the crime of assault in the second degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

"(1) That on or about the 8th day of August, 1982, the defendant knowingly:

"(a) assaulted BRYANT CONRAD with a weapon or other instrument or thing likely to produce bodily harm; or

"(b) inflicted grievous bodily harm upon BRYANT CONRAD with or without a weapon; and

"(2) That the acts occurred in Kitsap County, Washington.

"If you find from the evidence that element (2) and either (1)(a) or (1)(b) have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. Elements (1)(a) and (1)(b) are alternatives and only one need be proved. You must unanimously agree that (1)(a) has been proved or that (1)(b) has been proved or both (1)(a) and (1)(b) have been proved for you to return a verdict of guilty.

"On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, bearing in mind that elements (1)(a) and (1)(b) are alternatives and only need to prove beyond a reasonable doubt, then it will be your duty to return a verdict of not guilty."

[3]Instruction 5 provided:

"An assault is an act, with unlawful force, done with intent to inflict bodily injury upon another, tending, but failing to accomplish it, and accompanied with the apparent present ability to inflict the bodily injury if not prevented.

"An assault is also an intentional shooting of the person or body of another.

"An assault is also an intentional act, with unlawful force, which creates in another a reasonable apprehension and fear of bodily injury even though the actor did not actually intend to inflict bodily injury."

[4]Instruction 15 (WPIC 17.02) provided:

"It is a defense to a charge of assault that the force used was lawful as defined in this instruction.

"The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured or in preventing or attempting to prevent an offense against his person and when the force is not more than is necessary.

"The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appear to him at the time."

Instruction 16 (WPIC 16.05) provided:

tions, when read as a whole, adequately conveyed to the jury that the State bears the burden of proof on self–defense beyond a reasonable doubt. The jury was instructed that to convict, the State must prove beyond a reasonable doubt a criminal assault, that is, the use of force by the defendant was unlawful. Sampson in effect received the instruction he requested. We find no error.

■ Sampson next contends that the trial court's instructions explaining the law of self–defense required the jury to apply an objective standard in evaluating his actions rather than the proper subjective standard expressed in *State v. Wanrow*, 88 Wn.2d 221, 559 P.2d 548 (1977) and *State v. Fischer*, 23 Wn. App. 756, 598 P.2d 742 (1979).[5] We disagree. The court's instructions 15 and 16, considered together, correctly expressed the "subjective" test, *i.e.*, that the reasonableness of the defendant's use of force is to be evaluated from the defendant's perspective under the facts and circumstances known to the defendant. *See State v. Painter*, 27 Wn. App. 708, 711–12, 620 P.2d 1001 (1980). Instruction 16 also conveyed the proper standard regarding the amount of force available to the defendant under a claim of self–defense. Instructions are sufficient if, taken as a whole, they contain an accurate statement of the law and allow the defendant to argue his theory of the case. *State v. Johnson*, 29 Wn. App. 807, 812, 631 P.2d 413 (1981); *State v. Hall*, 22 Wn. App. 862, 865, 593 P.2d 554 (1979). There was no error.

Sampson finally contends that the court's instruction 17 on the unavailability of self–defense when the defendant is the aggressor constituted a comment on the evidence in violation of Const. art. 4, § 16. Instruction 17 (WPIC 16.04) provided:

"Necessary means that no reasonably effective alternative to the use of force appeared to exist and that the amount of force used was reasonable to effect the lawful purpose intended, under the circumstances as they reasonably appeared to the actor at the time."

[5]The challenged instructions are set out in footnote 4.

No person may by any unlawful act create a necessity for acting in self–defense and thereupon use force upon or toward another person. Therefore, if you find beyond a reasonable doubt the defendant was the aggressor and that defendant's acts and conduct provoked or commenced the fight, then self–defense is not available as a defense.

We find no merit in this contention.

■ Const. art. 4, § 16 prohibits a judge from conveying to the jury his personal attitudes on the merits of the case. *State v. Theroff,* 95 Wn.2d 385, 389, 622 P.2d 1240 (1980); *State v. Foster,* 91 Wn.2d 466, 481, 589 P.2d 789 (1979). An instruction does not constitute an impermissible comment on the evidence when there is sufficient evidence in the record to support it and the instruction is an accurate statement of the law. *See State v. Theroff, supra.* Instruction 17 is a correct statement of the law (*State v. Currie,* 74 Wn.2d 197, 443 P.2d 808 (1968); *State v. Heath,* 35 Wn. App. 269, 666 P.2d 922 (1983)), and the record discloses substantial evidence indicating that Sampson was the aggressor resulting in the shooting of Bryant Conrad. Sampson pulled a gun over a dispute involving a mere 9 cents, despite Conrad's and another witness's repeated assertions that Conrad did not owe the 9 cents. Sampson admitted he had a temper. There was evidence Conrad repeatedly asked Sampson to put the gun away, but Sampson refused. The focus of the conflict became the gun. By his own admissions, Sampson conceded that the presence of his gun "made [Conrad] . . . angry." Finally, inside the gas station office while Conrad attempted to call the police, Sampson watched Conrad with his gun cocked at his side. These actions may have precipitated the subsequent altercation, making Sampson the provoker. The aggressor/self–defense instruction was properly given to the jury.

We affirm the conviction.

WORSWICK, C.J., concurs.

ALEXANDER, J. (concurring)—I concur in affirming the

second degree assault conviction of Sampson. I depart from the majority in its determination that the court's instructions adequately conveyed to the jury that the State has the burden of disproving self–defense beyond a reasonable doubt consistent with the holding of *State v. Acosta*, 101 Wn.2d 612, 683 P.2d 1069 (1984). *Acosta* makes it clear that the court's instructions must *unambiguously* inform the jury that the State has the burden of proof on self–defense. *Acosta*, 101 Wn.2d at 621. The majority apparently argues that the jury could infer, from the court's definition of assault, that the State must prove beyond a reasonable doubt that the force used was unlawful. This is not sufficient under *Acosta*.

However, this error was harmless beyond a reasonable doubt because the evidence was insufficient to establish the assault was in self–defense, to warrant instructing the jury on self–defense. Sampson's testimony clearly indicates the gun's discharge was an accident. Self–defense implies an intentional act. *State v. Kerr*, 14 Wn. App. 584, 587, 544 P.2d 38 (1975). *Cf. State v. Alferez*, 37 Wn. App. 508, 681 P.2d 859 (1984). Moreover, there was substantial evidence that Sampson was the aggressor, thereby making self–defense unavailable to him. *See State v. Currie*, 74 Wn.2d 197, 443 P.2d 808 (1968). Consequently, the trial court's instructional error was not prejudicial.

Review denied by Supreme Court July 26, 1985.