IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| STATE OF WASHINGTON, | ) | No. 70965-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RAYMOND KURT EDWARDS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 20, 2015 |
| | ) | |

VERELLEN, A.C.J. — A jury convicted Raymond Edwards of one count of unlawful

possession of a controlled substance and one count of bail jumping. Prior to trial,

Edwards moved to suppress statements that he made to police both before and after

his arrest. The trial court denied Edwards' CrR 3.5 motion to suppress and admitted

statements that he had used meth earlier that morning and that a bag contained

methamphetamine. Edwards challenges the trial court's admission of both his prearrest

and postarrest statements at trial. He contends that his statements to police were not

voluntary. He also contends that he did not knowingly, voluntarily, and intelligently

waive his Miranda[1] right to remain silent. We affirm.

FACTS

Responding to an alleged assault, Officer Mike Catrain approached Edwards

sitting in a parked vehicle. Edwards appeared "in an altered state," "unsteady," and was

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

shaking and rocking back and forth.[2] Officer Catrain asked Edwards "what had happened [and] what was going on with him."[3] Edwards responded that "he had used meth earlier that morning."[4] Edwards understood and followed Officer Catrain's directives to exit the vehicle and sit on the curb. Additional officers arrived, including Officer Jason Torgeson. Officer Torgeson handcuffed Edwards and searched him incident to arrest, finding a bag of methamphetamine on Edwards' person. Officer Torgeson then read Edwards his <u>Miranda</u> rights. Officer Torgeson asked Edwards if he understood his <u>Miranda</u> rights and, making eye contact with Officer Torgeson, Edwards responded, "Yes."[5] When Officer Torgeson asked Edwards if he wished to speak with him, Edwards "mumbled yes."[6] Edwards complied with all of Officer Torgeson's directives, including to walk, sit down, stand up, and lean against the car.[7]

Edwards admitted to Officer Torgeson that the bag contained "meth."[8] Edwards again admitted that "he had [earlier] used methamphetamines."[9] Edwards' demeanor

---

[2] Report of Proceedings (RP) (Aug. 26, 2013) at 17, 18; <u>id.</u> at 17 ("[Edwards] didn't seem focused."); <u>id.</u> at 20 ("[Edwards] wasn't completely with it.").

[3] <u>Id.</u> at 15.

[4] <u>Id.</u>

[5] <u>Id.</u> at 28.

[6] <u>Id.</u> at 29 ("His response was he mumbled yes. I don't recall if it was a 'yes' or a 'ah-huh.'").

[7] <u>Id.</u> at 24 ("I told him to stand up, turn around, put his hands behind his back. He was able to put his hands behind his [b]ack. I asked him to interlock his fingers for me. I placed handcuffs on him and every directive that I gave him as far as walk with me, sit down, stand there, lean against the car. He complied with every direction that I gave him.").

[8] <u>Id.</u> at 30.

[9] <u>Id.</u> at 31.

reflected "anxiety," "twitching," and "decreased alertness."[10] Edwards responded appropriately to Officer Torgeson's questions and did not seem to be confused. Officer Torgeson expected the jail would require a fit-for-jail determination prior to booking, so he contacted a medical unit. An aid car transported Edwards to the hospital.

Before trial, Edwards moved to suppress his prearrest statement to Officer Catrain that "he had used meth earlier that morning"[11] and his postarrest statements to Officer Torgeson that the bag contained meth and that "he had [earlier] used methamphetamines."[12] The trial court denied Edwards' CrR 3.5 motion to suppress and admitted the statements,[13] determining in pertinent part that:

- Edwards was not in custody, and therefore <u>Miranda</u> did not apply when he responded to Office Catrain's question;
- Edwards was in custody when Officer Torgeson questioned him;
- Officer Torgeson advised Edwards of his <u>Miranda</u> rights;
- Edwards understood and verbally acknowledged his <u>Miranda</u> rights;
- Edwards made a voluntary, knowing, and intelligent waiver of his <u>Miranda</u> rights; and
- Edwards statements were made voluntarily and were not the product of threat, coercion, or undue influence or promise.

---

[10] <u>Id.</u> at 36; <u>id.</u> at 36-37 ("[I]f we were having a conversation or talking with him, he would kind of gaze over and look to the other side, and I would have to redirect him and contact him.").

[11] <u>Id.</u> at 15.

[12] <u>Id.</u> at 31.

[13] The trial court entered written findings of fact and conclusions of law on April 17, 2014, over one month after Edwards filed his opening brief. Edwards assigned error to the trial court's failure to enter written findings of fact and conclusions of law under CrR 3.5(c). But he does not contend in his reply brief that the delay prejudiced him, <u>State v. Landsiedel</u>, 165 Wn. App. 886, 893-94, 269 P.3d 347 (2012), or that the late entry of CrR 3.5 findings and conclusions were tailored to address the issues raised on appeal. <u>State v. Cannon</u>, 130 Wn.2d 313, 330, 922 P.2d 1293 (1996).

A jury convicted Edwards of one count of unlawful possession of a controlled substance (methamphetamine) and bail jumping.[14]

Edwards appeals.

## ANALYSIS

A trial court's determination that a confession is voluntary will not be "disturbed on appeal if there is substantial evidence in the record from which the trial court could have found the confession was voluntary."[15] "Substantial evidence is 'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'"[16] "Unchallenged findings of fact are verities on appeal."[17] "We review conclusions of law pertaining to suppression of evidence de novo."[18]

Edwards challenges the trial court's admission of his prearrest statement at trial that "he had used meth earlier that morning."[19] He contends that the statement was involuntary and was the product of police coercion. He also contends that his intoxication rendered the statement involuntary. We disagree.

"The Fifth Amendment right against self-incrimination requires police to inform a suspect of his or her Miranda rights before a custodial interrogation."[20] But here, the

---

[14] The State initially charged Edwards with one count of unlawful possession of a controlled substance. But after Edwards failed to appear at a court hearing, the State amended the information to include a charge for one count of bail jumping.

[15] State v. Aten, 130 Wn.2d 640, 664, 927 P.2d 210 (1996).

[16] State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (quoting State v. Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999)).

[17] Id.

[18] Id.

[19] RP (Aug. 26, 2013) at 15.

[20] State v. Cunningham, 116 Wn. App. 219, 227, 65 P.3d 325 (2003).

parties do not contend that Edwards' prearrest statement to Officer Catrain was the product of custodial interrogation, requiring Miranda warnings.[21] Because Edwards' Miranda rights did not yet attach, we must address Edwards' argument that his statement to Officer Catrain was not voluntary for due process purposes.

Due process requires that a confession be voluntary and free of police coercion.[22] Police conduct cannot overbear the defendant's will to resist and force a confession not freely determined.[23] "To be voluntary, a confession must be the product of a rational intellect and a free will."[24] "[A] statement is voluntary if it is made

---

[21] See, e.g., Sessoms v. Grounds, 768 F.3d 882, 895 (9th Cir. 2014) ("Miranda warnings are required at the outset of custodial interrogation."); State v. McIntyre, 39 Wn. App. 1, 6, 691 P.2d 587 (1984) ("Miranda warnings need be given only when the suspect is subject to custodial interrogation or its functional equivalent."); 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PROCEDURE AND PRACTICE § 3310, at 861 (3d ed. 2004) ("General on-the-scene questioning as to facts surrounding a crime or other questioning of citizens in the fact finding process is specifically exempted from the Miranda warning requirement.").

Importantly, Edwards does not assign error to the trial court's entry of conclusion of law 1 that "[t]he defendant was not in custody when he made the admission regarding the use of methamphetamine to Officer Michael Catrain. The statement was not the product of custodial interrogation requiring Miranda warning advisement." CP at 60.

[22] State v. Reuben, 62 Wn. App. 620, 624, 814 P.2d 1177 (1991); see also Colorado v. Connelly, 479 U.S. 157, 167, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986) (holding that coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment").

[23] Reuben, 62 Wn. App. at 624; see also State v. Cushing, 68 Wn. App. 388, 392, 842 P.2d 1035 (1993) ("'Whether a confession is free and voluntary . . . [is determined by] whether it was extracted by any sort of threats, violence, or direct or implied promises, however slight. A confession that is the product of coercion, physical or psychological, is involuntary and not admissible.'" (quoting State v. Riley, 17 Wn. App. 732, 735, 565 P.2d 105 (1977))).

[24] State v. Rupe, 101 Wn.2d 664, 679, 683 P.2d 571 (1984); see also United States v. Kelley, 953 F.2d 562, 565 (9th Cir. 1992) ("A statement may not be admitted if because of mental illness, drugs, or intoxication, the statement was not the product of a rational intellect and a free will.").

spontaneously, is not solicited, and not the product of custodial interrogation."[25]

Here, the trial court determined that Edwards' statement was "voluntarily made and not the product of threat, coercion, or undue influence or promise."[26] Officer Catrain approached a parked car occupied by Edwards and asked him "what had happened [and] what was going on with him."[27] Edwards responded that "he had used meth earlier that morning."[28] Edwards' statement, while not entirely responsive to Officer's Catrain's general question, was clearly spontaneous. Officer Catrain did not solicit Edwards' statement.[29] The record is devoid of any evidence that Officer Catrain applied pressure or other coercive techniques.

Moreover, the record does not support Edwards' contention that his intoxication overcame his free will and ability to think rationally. We look to "the totality of the circumstances" to determine whether a confession is voluntary.[30] Factors we may consider include "the defendant's physical condition, age, experience, mental abilities,

---

[25] State v. Ortiz, 104 Wn.2d 479, 484, 706 P.2d 1069 (1985); State v. Cloud, 7 Wn. App. 211, 213, 498 P.2d 907 (1972) ("[I]f questioning is noncoercive and does not contain the potentiality of compulsion inherent in in-custody interrogations but is conducted during a routine investigation without pressure being exerted by the examiner, it is permissible.").

[26] CP at 61.

[27] RP (Aug. 26, 2013) at 15.

[28] Id.

[29] Miranda, 384 U.S. at 478 ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."). Edwards' statement is the kind of "unforeseeable result" that "the police surely [should not] be held accountable for" because Officer Catrain could not have known that his question would elicit an admission from Edwards. Rhode Island v. Innis, 446 U.S. 291, 301-02, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

[30] Ortiz, 104 Wn.2d at 484.

and the conduct of the police."[31] Evidence of intoxication is but one factor in determining voluntariness of a confession.[32]

Here, while Edwards appeared "in an altered state," "unsteady," and was shaking and rocking back and forth, he followed Officer Catrain's directives and responded appropriately to his questions.[33] That a witness told dispatch that Edwards was "acting very irrational[ly]" does not undermine Officer Catrain's own observations about Edwards' behavior.[34] Edwards' speech "wasn't real clear," but Officer Catrain testified that Edwards did not appear intoxicated.[35] Although Edwards lacked focus at times during the encounter, the record reflects that Edwards' ability to think rationally was not impaired by his intoxication. Because substantial evidence in the record supports the trial court's determination that Edwards' prearrest statement to Officer Catrain was voluntary, the trial court properly admitted his prearrest statement at trial.

Edwards challenges the trial court's admission of his postarrest statements to Officer Torgeson that the bag contained "meth" and "he had [earlier] used methamphetamines."[36] He contends that his postarrest statements were not voluntary for Miranda purposes. He also contends that he neither understood his Miranda rights nor knowingly, voluntarily, and intelligently waived them. We disagree.

---

[31] Cushing, 68 Wn. App. at 392.

[32] State v. Cuzzetto, 76 Wn.2d 378, 383, 386, 457 P.2d 204 (1969); State v. Gardner, 28 Wn. App. 721, 723, 626 P.2d 56 (1981).

[33] RP (Aug. 26, 2013) at 17, 18.

[34] Id. at 13.

[35] Id. at 18.

[36] Id. at 30, 31.

Under both the federal and state constitutions, a defendant possesses rights against self-incrimination.[37] Miranda warnings protect these rights in custodial interrogation situations. Here, it is uncontroverted that Edwards was in custody and subject to interrogation when Officer Torgeson advised Edwards of his Miranda rights and asked him questions.

A defendant's custodial statements to police are voluntary for Miranda purposes if a defendant understood those rights and knowingly, voluntarily, and intelligently waived them.[38] "The State bears the burden of showing a knowing, voluntary, and intelligent waiver of Miranda rights."[39] "We will not disturb a trial court's conclusion that a waiver was voluntarily made if the trial court found . . . that the statements were voluntary and substantial evidence in the record supports the finding."[40]

"The voluntariness of a confession is determined by examining the totality of the circumstances in which the confession was made."[41] Intoxication does not render a statement involuntary unless the record reflects that the defendant was unable to comprehend his words or actions.[42] Intoxication is only "a factor in deciding whether the

---

[37] U.S. CONST. amend. V; WASH. CONST. art. I, § 9.

[38] Miranda, 384 U.S. 444; see also State v. Hobart, 34 Wn. App. 187, 190, 659 P.2d 557 (1983) ("the test is whether defendant knew that he had the right to remain silent, not whether he understood the precise nature of the risks of talking").

[39] State v. Athan, 160 Wn.2d 354, 380, 158 P.3d 27 (2007); State v. Ludvik, 40 Wn. App. 257, 265, 698 P.2d 1064 (1985).

[40] Athan, 160 Wn.2d at 380.

[41] Cushing, 68 Wn. App. at 392.

[42] Cuzzetto, 76 Wn.2d at 383, 386.

defendant understood his rights and made a conscious decision" to forgo them.[43]

Here, the totality of the circumstances supports the trial court's determination that Edwards understood his <u>Miranda</u> rights and knowingly, voluntarily, and intelligently waived them. First, immediately after reading Edwards his <u>Miranda</u> rights, Officer Torgeson asked Edwards if he understood those rights. Edwards made eye contact and responded, "Yes."[44] The record does not support Edwards' contention that he was incapable of understanding his rights. Although Edwards may have shown signs of intoxication, the record supports that he understood the officers' directives and responded appropriately to their questions. No evidence suggests that Edwards did not know "he had the right to remain silent."[45] Therefore, substantial evidence supports the trial court's finding that Edwards was sufficiently coherent and could understand his <u>Miranda</u> rights.

Second, substantial evidence supports the trial court's determination that Edwards knowingly, voluntarily, and intelligently waived his <u>Miranda</u> rights. Here, after Officer Torgeson advised Edwards of his <u>Miranda</u> rights, he asked Edwards if he wished to speak with him. Edwards responded, "Yes."[46] Edwards properly followed Officer Torgeson's instructions and cooperated with him during the encounter. While some evidence suggests that Edwards was affected by some substance, the totality of the

---

[43] <u>Gardner</u>, 28 Wn. App. at 723; <u>see also</u> <u>Reuben</u>, 62 Wn. App. at 625 ("In deciding whether [a defendant] waived his right to remain silent, evidence of intoxication is a factor to be considered.").

[44] RP (Aug. 26, 2013) at 28.

[45] <u>Hobart</u>, 34 Wn. App. at 190.

[46] RP (Aug. 26, 2013) at 28.

circumstances supports the trial court's determination that Edwards knowingly, voluntarily, and intelligently waived his Miranda rights.

Finally, the officers' decision to summon an aid car does not render Edwards' postarrest statements involuntary. The officers believed that the jail would require a fit-for-jail determination, and the record reflects that it was a precautionary decision to summon an aid car due to the potential increasing effects of the methamphetamine on Edwards.

Therefore, we conclude that substantial evidence supports the trial court's determination that Edwards spontaneously and voluntarily made his prearrest statement to Officer Catrain, that Edwards understood his Miranda rights, that he knowingly, voluntarily, and intelligently waived those rights, and that he voluntarily made his postarrest statements to Officer Torgeson. Accordingly, we affirm the trial court's decision to admit Edwards' prearrest and postarrest statements at trial and affirm his convictions.

WE CONCUR: