[No. 10339-1-III.    Division Three.    June 6, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. OLESON T. REUBEN, *Appellant*.

*Thomas Bothwell* and *Prediletto, Halpin, Cannon, Scharnikow & Bothwell, P.S.*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Kenneth L. Ramm, Jr., Deputy,* for respondent.

[As amended by order of the Court of Appeals August 27, 1991.]

SHIELDS, J. — Oleson Reuben was convicted of vehicular homicide after a bench trial on stipulated facts. He appeals, contending incriminating statements made by him to a police detective were inadmissible and should have been suppressed. We affirm.

On August 26, 1988, at approximately 2 p.m., Mr. Reuben was involved in a single-vehicle automobile accident just north of Wapato in Yakima County. Joseph Wesley, a passenger in the vehicle, died as a result of the accident. Mr. Reuben was transported by ambulance to St. Elizabeth Medical Center in Yakima, where he was treated for numerous fractures and lacerations. Washington State Patrol (WSP) Trooper J.L. Klundt was dispatched to the hospital to obtain blood samples from the vehicle's occupants. He located Mr. Reuben in the emergency room. Using a WSP form, Trooper Klundt read Mr. Reuben his constitutional rights, advised him he was under arrest for vehicular homicide and told him blood samples would be taken. Trooper Klundt testified Mr. Reuben maintained eye contact throughout, and when asked if he had any questions or comments, said "Go f[---] yourself" and turned his head away. He made no other statement to Trooper Klundt. Trooper Klundt explained Mr. Reuben sustained obvious injury to his arm and torso area, was connected to IV's, and was physically unable to sign the form. He wrote "unable to sign" in the spaces for Mr. Reuben's signature acknowledging the information had been read to him and then left the emergency room.

WSP investigative detective B.J. Armstrong arrived at the hospital shortly thereafter. Trooper Klundt told him Mr. Reuben had been advised of his constitutional rights and given the special evidence warning, but seemed to be in too much pain to talk. When Detective Armstrong entered the emergency room, he observed Mr. Reuben was being catheterized and appeared to be in pain. He left and returned in a few minutes; Mr. Reuben appeared relieved and no longer in pain, but was noticeably intoxicated. Detective Armstrong identified himself and questioned Mr. Reuben briefly about the accident. Mr. Reuben explained where the occupants of the vehicle were sitting, indicated he had been driving, and admitted he was an alcoholic and was very drunk. In the emergency room, Mr. Reuben was treated by Dr. D.G. Olson. In the patient history and physical examination form he filled out, Dr. Olson stated Mr. Reuben "admitted he had been drinking for 3 days" and had a blood alcohol level of .26 percent when he was brought into the emergency room.[1]

On August 29, 1988, Detective Armstrong again contacted Mr. Reuben at the hospital. Before asking Mr. Reuben for details of the accident, he advised him of his constitutional rights. He read them from a WSP form which Mr. Reuben signed, acknowledging he had been read his rights. Mr. Reuben told the detective two of the men who were passengers had received checks and all four of the vehicle's occupants had spent the money on drinking. He could not remember the accident, or whether he had been driving, but said he was taking two of the passengers to the alcohol center. The blood alcohol contents of the passengers ranged from .22 to .34 percent.

---

[1] Independent testing by the Washington State Toxicology Laboratory indicated Mr. Reuben's blood alcohol content was .25 percent. At the suppression hearing, Dr. Olson referred to a blood alcohol content of .29 percent. The court refers to a blood alcohol content of .29 percent in its findings of fact and conclusions of law following the suppression hearing, and to .25 percent in its findings of fact and conclusions of law following trial.

Mr. Reuben was charged with the crime of vehicular homicide, in violation of RCW 46.61.520(1) — particularly, that he:

[W]hile under the influence of intoxicating liquor or drugs, and/or by operation of a vehicle in a reckless manner, and/or with disregard for the safety of others, did drive a vehicle injuring Joe J. Wesley, whose death was the proximate result of that injury.

To secure a conviction, the State had the burden of proving beyond a reasonable doubt Mr. Reuben was driving the vehicle. The State relied in part on his statement he was driving, which was held admissible at a CrR 3.5 pretrial hearing.

At the suppression hearing, Dr. Olson testified Mr. Reuben knew he was in the hospital and was being treated for injuries, but he did not always respond to the doctor's questions. He testified Mr. Reuben's liver was enlarged and hardened, indicating cirrhosis which is most commonly caused by long-term alcohol use. He also testified the hospital's blood test indicated Mr. Reuben's blood alcohol content was .29 percent, which would cause varying degrees of impairment in different individuals, with the least impairment occurring in people who had consumed alcohol for many years.

Mr. Reuben contends his statement to Detective Armstrong, made in the emergency room after he was warned of his rights by Trooper Klundt, was inadmissible.[2] (1) Pro se, he contends his statement was the result of police coercion; and (2) through counsel, he contends the State failed to prove he voluntarily, knowingly and intelligently waived his right to remain silent. *See Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10

[2]The suppression hearing addressed the admissibility of both Mr. Reuben's statements to Detective Armstrong on August 26, in the emergency room, and on August 29, while he was still in the hospital recovering. Both were held admissible. While Mr. Reuben assigns error to the admission of his "statements", he makes no arguments and cites no authority to support a contention his second conversation with Detective Armstrong was admitted in error.

A.L.R.3d 974 (1966); *State v. Davis*, 73 Wn.2d 271, 438 P.2d 185 (1968).

To be admissible, Mr. Reuben's admission he was driving the vehicle must pass two tests of voluntariness: (1) the due process test, whether the statement was the product of police coercion; and (2) the *Miranda* test, whether a defendant who has been informed of his rights thereafter knowingly and intelligently waived those rights before making a statement. *State v. Vannoy*, 25 Wn. App. 464, 467-69, 610 P.2d 380 (1980).

1. The Due Process Test of Voluntariness.

The test of voluntariness for due process purposes is " ' "whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined — a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth." ' " *Vannoy*, at 467 (quoting *State v. Braun*, 82 Wn.2d 157, 161-62, 509 P.2d 742 (1973)). The trial court's determination the statements were voluntary will not be overturned if there is substantial evidence in the record from which the court could find voluntariness by a preponderance. *Vannoy*, at 467.

Mr. Reuben argues his will to resist was overcome by the persistence of Detective Armstrong. We disagree. There is no evidence of overreaching by the WSP officers. Trooper Klundt waited while nurses attended to Mr. Reuben. He approached Mr. Reuben in uniform, introduced himself, and asked a couple of general questions about his health. The trooper then read him his rights and gave him the special evidence warning as a prelude to taking a blood sample. When he finished, and asked Mr. Reuben if he had any questions, Mr. Reuben answered with an expletive and turned away. Since Mr. Reuben apparently did not want to talk, Trooper Klundt left the room.

Detective Armstrong waited until Mr. Reuben was made comfortable. He identified himself and indicated he

wanted to find out where everybody was seated in the vehicle. Mr. Reuben responded to his questions, describing where everybody was located and what they had been doing prior to the accident. The questioning lasted about 2 minutes. There was no coercion. There is substantial evidence in the record indicating Mr. Reuben's statement was voluntarily made in accordance with the standards of due process.

2. The *Miranda* Test of Voluntariness.

The test of voluntariness for *Miranda* purposes places upon the prosecution the heavy burden of establishing Mr. Reuben was fully advised of his rights, understood them, and knowingly and intelligently waived them. *Miranda*, 384 U.S. at 475; *Davis*, at 281-88. Mr. Reuben argues the State failed to meet its burden of proof. He claims his obvious intoxication rendered him incapable of understanding what was going on, and his outburst with an expletive followed by turning away from the trooper suggests a refusal to waive his rights which does not support the court's finding of voluntary waiver.

The evidence that Mr. Reuben was fully advised of his rights on August 26 in the emergency room is uncontroverted. Mr. Reuben does not deny he was read his rights; rather, he asserts he does not remember anything which occurred in the emergency room. The court's conclusion Mr. Reuben understood his rights is also supported by the record: Mr. Reuben's attention while being read his rights; his outburst with an expletive when he was told he was under arrest; and the coherent information Mr. Reuben gave Detective Armstrong indicated he understood exactly what was going on. The court did not err in finding Mr. Reuben had been fully advised of his rights and understood them.

In deciding whether Mr. Reuben waived his right to remain silent, evidence of intoxication is a factor to be considered. *State v. Cuzzetto*, 76 Wn.2d 378, 457 P.2d 204

(1969); *State v. Gardner*, 28 Wn. App. 721, 723, 626 P.2d 56, *review denied*, 95 Wn.2d 1027 (1981). Based on Dr. Olson's testimony regarding Mr. Reuben's cirrhotic liver, the court found there was evidence Mr. Reuben was an alcohol seasoned person who could show less than usual impairment at a .29 percent level of intoxication. Here, intoxication was not a significant factor affecting cognition.

■ Nevertheless, the State failed to prove Mr. Reuben waived his rights. By his expletive to the trooper and turning his head away, Mr. Reuben asserted his right to remain silent. Trooper Klundt properly ceased interrogation as required by *Miranda*, 384 U.S. at 473-74. While there is no per se proscription on further questioning by the police, resumption of interrogation after a very short respite, about the same incident and without new warnings, violates the *Miranda* guidelines. *See Michigan v. Mosley*, 423 U.S. 96, 100-04, 46 L. Ed. 2d 313, 96 S. Ct. 321, 324-26 (1975); *see also* 1 W. LaFave & J. Israel, *Criminal Procedure* § 6.9(g) (1984). Mr. Reuben's statement to Detective Armstrong in the emergency room without new warnings should have been suppressed.

■■ However, admission of an involuntary confession obtained in violation of *Miranda* is subject to treatment as harmless error. *See Arizona v. Fulminante*, ___ U.S. ___, 113 L. Ed. 2d 302, 111 S. Ct. 1246, 1255 & n.6, *reh'g denied*, ___ U.S. ___, 114 L. Ed. 2d 472, 111 S. Ct. 2067 (1991).[3] To find an error affecting a constitutional right harmless, the reviewing court must find it harmless

---

[3] *Arizona v. Fulminante, supra*, was decided while this case was pending; it was not addressed by either counsel in the briefs or at oral argument. In a 5-to-4 decision, the Supreme Court held harmless error analysis applies to the admission of coerced confessions. The dissenting justices acknowledged, without disapproval, the Circuit Courts of Appeal apply the harmless error rule to the introduction of incriminating statements taken in violation of *Miranda*; however, it is their opinion the harmless error rule is inapplicable to erroneously admitted coerced confessions. *Fulminante*, 111 S. Ct. at 1253-57 (White, J., dissenting in part III).

beyond a reasonable doubt. *Arizona v. Fulminante,* 111 S. Ct. at 1257; *Chapman v. California,* 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824, 828, 24 A.L.R.3d 1065, *reh'g denied,* 386 U.S. 987, 18 L. Ed. 2d 241, 87 S. Ct. 1283 (1967); *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986). The Washington Supreme Court has adopted the "overwhelming untainted evidence" standard in harmless error analysis; therefore, we look only at the untainted evidence to determine if it is so overwhelming it necessarily leads to a finding of guilt. *Guloy,* at 426.

Here, the untainted evidence upon which the trial court relied consisted of proof of Mr. Reuben's ownership of the vehicle and the stipulated reports of two Wapato police officers. Officer Quantrille described what he observed at the scene of the accident: "The subject that appeared to be the driver, Oleson Reuben, was laying across the front seat with his head toward the passenger side of the vehicle"; Officer Rosenow also described what he observed: "An Indian male, who I later learned was Oleson Reuben, was lying in the front seat with Redhorn on top of him. Mr. Reuben's lower body was under the steering column". Given the nature and credibility of the properly admitted evidence, we find the erroneous admission of Mr. Reuben's statement harmless beyond a reasonable doubt.

Finally, in his pro se brief, Mr. Reuben contends the court erred in its finding on disputed fact 1, "The officer's presence was corroborated by the testimony of Dr. Olson." Mr. Reuben is correct. However, Mr. Reuben does not claim Trooper Klundt and Detective Armstrong were not there, or that he did not have his rights read to him. He has no memory of the accident, or of anything else which occurred at the hospital, until he awoke on the morning of August 29 and discovered he was in a hospital bed. The testimony of Dr. Olson that Mr. Reuben seemed aware of his surroundings and of what was going on did

628

corroborate the officers' testimony Mr. Reuben was coherent and understood his rights. The error was not raised below, is not of constitutional magnitude, and was harmless in the context of this case.[4]

We affirm the judgment of the trial court and uphold Mr. Reuben's conviction.

GREEN, C.J., and MUNSON, J., concur.

After modification, further reconsideration denied August 27, 1991.

---

[4]Mr. Reuben's argument Dr. Olson's testimony was erroneously admitted at the suppression hearing in violation of ER 401 (or CrR 401, as he puts it) is without merit. The doctor's testimony was clearly relevant and he was called as a witness by the defense.