**FILED**
**DEC 8, 2015**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32641-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| MONTY RAY BOCKMAN, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Monty Bockman appeals his convictions for residential burglary, unlawful possession of a controlled substance (methamphetamine), and bail jumping. He contends the trial court erred in admitting statements he made to law enforcement. Because any error in admitting the statements was harmless, we affirm.

## FACTS

Ryan Boyce, a West Richland police officer who worked undercover at the time of the burglary, did not typically discuss his occupation with his neighbors. Late in the morning on December 9, 2013, Mr. Boyce returned home from running errands and discovered his home had been burglarized. He entered his house via the front door and saw the sliding glass door leading to the backyard was open. He then noticed five or six fence boards kicked out in the fence separating his yard from his neighbor's, Michael

Hennessey; the fence boards were found in Mr. Hennessey's backyard. The gate to Mr. Boyce's backyard was also open. An unfamiliar bicycle tire was leaning up against the fence inside Mr. Boyce's backyard. Mr. Boyce observed footprints in the dirt on both sides of the fence. Mr. Boyce armed himself and checked the house. He determined his work laptop was missing, but other valuables were not stolen. Mr. Boyce called the police.

Officer Joshua Sullivan responded. Officer Sullivan and Mr. Boyce went through the hole in the fence and verified Mr. Hennessey was not at home. The gates to Mr. Hennessey's backyard were locked. Mr. Boyce told Officer Sullivan he believed his neighbor, Mr. Bockman, may have committed the burglary.

After the officers left, Mr. Boyce, concerned about his missing work laptop, decided to see if it had been dropped or hidden near his house. He crawled through the fence into Mr. Hennessey's backyard and decided to check the shed. He could not open the shed doors because someone was holding them closed. He stepped back from the shed and called the police. As he was speaking with dispatch, Mr. Boyce heard a male voice inside the shed asking him not to call the police and saying they could work things out. Suddenly, the doors opened and Mr. Bockman emerged stating, "I told you not to call the police." Report of Proceedings at 44. Mr. Boyce, believing Mr. Bockman might assault him because of his aggressive tone and stance, brought Mr. Bockman to the ground. The two men began struggling. Mr. Bockman called Mr. Boyce a pig, said Mr.

2

Boyce did not deserve his house, and stated Mr. Boyce and "Grego" were what was wrong with the world. Mr. Boyce believed Mr. Bockman was referring to Sergeant Grego, Mr. Boyce's coworker.

Officer Sullivan returned to Mr. Boyce's home. Officer Sullivan and a second officer detained Mr. Bockman after a struggle. Mr. Bockman lost one of his boots during the struggle with Mr. Boyce; the tread pattern of the boot matched the footprints found in Mr. Boyce's and Mr. Hennessey's backyards. Officer Sullivan searched Mr. Bockman and found a digital camera, a pink feather, a small flashlight, and a thumb drive in his pants pocket. Mr. Boyce stated all items except for the feather belonged to him.

Officer Sullivan read Mr. Bockman his *Miranda*[1] rights while in Mr. Hennessey's backyard. He asked Mr. Bockman what was going on, and Mr. Bockman replied he had permission from Mr. Hennessey to be in his backyard. Mr. Bockman also stated his bicycle had a flat tire he was trying to fix. At this point, Officer Sullivan stopped further questioning as Mr. Bockman became incoherent. At trial, Mr. Hennessey denied giving Mr. Bockman permission to be in his backyard.

Officers executed a search warrant at Mr. Bockman's residence to search for Mr. Boyce's work laptop. They found the laptop as well as a pair of pink shoes belonging to Mr. Boyce's wife in a bag just inside the front door; the bag also contained mail

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

addressed to Mr. Bockman. In a second bag, officers found a glass smoking pipe and a baggie of a white substance, later confirmed to be methamphetamine. The officers also saw a bicycle missing a tire in Mr. Bockman's kitchen.

In a CrR 3.5 hearing, the trial court held Mr. Bockman's statements to Officer Sullivan were admissible because Officer Sullivan advised Mr. Bockman of his rights prior to questioning, Mr. Bockman verbally acknowledged he understood those rights, and Mr. Bockman made his statements knowingly, freely, and voluntarily.

At trial, the State introduced evidence showing Mr. Bockman failed to appear in court at an omnibus hearing on January 16, 2014. A jury found Mr. Bockman guilty of residential burglary, unlawful possession of a controlled substance, and bail jumping. Mr. Bockman appealed.

## ANALYSIS

The issue is whether the trial court erred in admitting Mr. Bockman's statements to Officer Sullivan. Mr. Bockman contends the trial court incorrectly held he waived his *Miranda* rights and the admission of his statements is not harmless error.

Assuming without deciding the trial court erroneously admitted Mr. Bockman's statements, any error is harmless. Admission of statements obtained in violation of *Miranda* is subject to a harmless error analysis. *State v. Reuben*, 62 Wn. App. 620, 626, 814 P.2d 1177 (1991). In analyzing harmless error, the Washington Supreme Court adopted the "overwhelming untainted evidence" standard: "we look only at the untainted

4

evidence to determine if it is so overwhelming it necessarily leads to a finding of guilty." *Id.* at 627 (citing *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985)).

Mr. Bockman made two statements to Officer Sullivan: (1) Mr. Hennessey gave him permission to be in the backyard, and (2) he wanted to fix a flat bicycle tire. Neither statement had any effect on Mr. Bockman's convictions for unlawful possession of a controlled substance and bail jumping. Officers found methamphetamine in a bag inside Mr. Bockman's house as well as Mr. Bockman's bank card in the same bag; this proves unlawful possession of a controlled substance. Certified court documents produced at trial showed Mr. Bockman failed to appear for an omnibus hearing; this proves bail jumping.

As for the residential burglary conviction, Mr. Bockman's statements were not a confession to the burglary. Other overwhelming, untainted evidence necessarily leads to a finding of guilt. Officers saw footprints consistent with Mr. Bockman's boots in Mr. Boyce's and Mr. Hennessey's backyards, near the newly damaged fence. Mr. Bockman was found hiding in Mr. Hennessey's shed several hours after the burglary. Mr. Hennessey never gave Mr. Bockman permission to be in his backyard. Mr. Bockman told Mr. Boyce not to call the police and became aggressive after Mr. Boyce did call. He referred to one of Mr. Boyce's coworkers even though Mr. Boyce had never told Mr. Bockman of his occupation; however, the closet door where Mr. Boyce kept his police uniforms was opened during the burglary. When officers searched Mr. Bockman, they

found Mr. Boyce's digital camera, flashlight, and thumb drive in his pants pocket. Mr. Boyce's missing laptop, his wife's shoes, and mail addressed to Mr. Bockman were found in a bag in Mr. Bockman's house. In Mr. Bockman's kitchen, officers found a bicycle with a missing tire. Given this evidence, Mr. Bockman's statements were not essential to the jury's finding of guilt on the residential burglary charge.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, J.

_____
Lawrence-Berrey, J.