# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50231-3-II |
| Respondent, | |
| v. | |
| MARK DOUGLAS WILMER, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, A.C.J. — Mark Douglas Wilmer appeals his convictions for three counts of custodial assault committed against correctional officers at the Washington Corrections Center (WCC). Wilmer argues that the trial court erred by not suppressing the statement he made to a Department of Corrections (DOC) investigator during an interrogation without first being provided *Miranda*[1] warnings. We affirm.

## FACTS

### A. THE INCIDENT

Mark Wilmer is an inmate at the WCC in Shelton, Washington, where he resides in the Intensive Management Unit (IMU). Wilmer claims that the IMU is a more restrictive unit within the WCC, compared to the units where the general prison population live.[2] The incidents that gave rise to Wilmer's charged offenses occurred during his incarceration in the IMU.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

[2] No portion of the record supports this assertion.

On January 27, 2015, Corrections Officer Kenneth Nonamaker approached Wilmer's cell during a security check. Wilmer threw an unknown liquid substance onto Officer Nonamaker's right foot and left leg through a gap in the cell door. Officer Nonamaker could not identify the liquid by its color or smell, but reported the incident immediately after.

On January 31, Corrections Officer Shannon Shinn, along with Corrections Officer Eric Wulf, escorted a pill line nurse through the cell block in which Wilmer was incarcerated. As Officer Shinn passed Wilmer's cell, Wilmer threw a yellow liquid that smelled of urine. The yellow liquid got on Officer Shinn's hair, face, and body. Shortly after, Officer Wulf overheard Wilmer say that the yellow substance that he threw onto Officer Shinn was urine. Wilmer also stated that he was going to continue assaulting staff.

On February 1, as Corrections Officer Joshua Underberg was conducting a security check, Wilmer threatened to sexually assault Officer Underberg's wife and children upon release from WCC. Wilmer also used a chip bag to propel what smelled like urine onto Officer Underberg as he passed Wilmer's cell.

Each corrections officer reported their separate incidents with Wilmer. On February 4, Joshua Adams, a Department of Corrections investigator, compiled the corrections officers' reports and investigated the alleged assaults. Adams approached Wilmer's cell in the IMU and spoke to him for a couple of minutes. Adams attempted to move Wilmer to a separate interview room, but Wilmer refused to leave his cell.

Adams did not read Wilmer his *Miranda* rights or ask specific questions about each alleged incident. He asked Wilmer why he had been assaulting prison staff, to which Wilmer responded

2

that his constitutional rights were being violated because he had not been allowed access to the yard or shower.

The State charged Wilmer with three counts of custodial assault.

B.      MOTION TO SUPPRESS

Wilmer moved to suppress the statement he made to Adams.[3]  Wilmer argued that his statement in response to Adams's question was inadmissible because it was the product of custodial interrogation and Adams did not provide Wilmer his *Miranda* warnings.  Wilmer contended that he was in custody when he made the statement because he was a prisoner of the DOC and housed in the IMU.  The trial court found that Wilmer's statement to Adams was admissible.

The trial court ruled that the statement was the result of interrogation by a State agent, but it was not custodial in nature because no further restrictions were placed upon Wilmer.  Therefore, the trial court denied Wilmer's motion to suppress and admitted Wilmer's statement made to Adams.

C.      TRIAL

At trial, Officers Nonamaker, Shinn, Wulf, and Underberg testified to the facts discussed above.  The State supplemented the officers' eye-witness accounts with security footage of Wilmer's cell block in the IMU during each assault.  While the angle of the video did not show inside Wilmer's cell or Wilmer in the act of throwing the urine, it showed the officers approaching

---

[3] Wilmer also moved to suppress the statements he made about threatening Officer Underberg's family, throwing urine on Officer Shinn, and continuing to assault staff.  Wilmer does not challenge the trial court's admission of these statements.

Wilmer's cell and being sprayed with urine.[4]  The State also called Adams, who testified as to Wilmer's response that he was assaulting corrections officers because he was denied access to the yard or a shower.

Wilmer testified at trial that he recalled being placed on lockdown for assaulting corrections officers, but denied having participated in the incidents as described by the officers' testimonies.  He alleged that another resident of the IMU, from the adjacent cell, had assaulted Officer Shinn and Officer Underberg and that he did not report the identity of the responsible party to the corrections officers for fear of retribution by his fellow inmates.

On rebuttal, the State called Adams to address Wilmer's allegations that another inmate assaulted the corrections officers.  Adams testified that it would have been impossible for an individual in the cell next to Wilmer's to have assaulted the corrections officers because of the positioning of the cell doors.

The jury found Wilmer guilty on all three counts of custodial assault.  Wilmer appeals.

ANALYSIS

Wilmer argues that the trial court erred by denying his motion to suppress testimony regarding the statement he made to Adams because Adams's questioning constituted a custodial interrogation and should not have been admissible at trial.  Assuming without deciding that the trial court erred by not suppressing Wilmer's statement to Adams, we hold that any claimed error was harmless.

---

[4] The security footage was entered into evidence, but has not been included in the appellate record.

No. 50231-3-II

A.    STANDARD OF REVIEW

The admission of statements made in violation of *Miranda* is subject to a constitutional harmless error analysis. *State v. Reuben*, 62 Wn. App. 620, 626, 814 P.2d 1177, *review denied*, 118 Wn.2d 1006 (1991). Thus, "we will vacate a conviction unless it necessarily appears, beyond a reasonable doubt, that the misconduct did not affect the verdict." *State v. Monday*, 171 Wn.2d 667, 680, 257 P.3d 551 (2011). An error is harmless if, disregarding the evidence admitted in error, the remaining evidence "is so overwhelming that it necessarily leads to a finding of guilt." *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). Constitutional errors are presumed prejudicial and the burden of proving harmless error falls upon the State. *Id.* at 425.

B.    FAILING TO SUPPRESS ADAMS'S TESTIMONY WAS A HARMLESS ERROR

Here, even if the trial court erroneously found Wilmer's statement to Adams to be admissible, the untainted evidence against Wilmer was overwhelming. Officers Nonamaker, Shinn, and Underberg provided testimony at trial about Wilmer spraying urine on them. Officer Wulf overheard Wilmer say that he threw urine on Officer Shinn and that Wilmer was going to continue assaulting the staff. There was video footage from WCC's security cameras depicting the staff assaults. Even though Wilmer claimed that another inmate was responsible for the assaults, Adams testified that, because of the positioning of the cell doors, it would have been impossible for the inmate in the cell next to Wilmer to have assaulted the corrections officers.

5

No. 50231-3-II

Based on this overwhelming evidence, even if the trial court erred in admitting Wilmer's statement to Adams, the error was harmless beyond a reasonable doubt. Therefore, Wilmer's challenge fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Bjorgen, J.

_____
Melnick, J.

6