# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51668-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| E.E., | |
| Appellant. | |

GLASGOW, J. —EE argues that his juvenile felony harassment conviction must be reversed because his confession was obtained in violation of *Miranda*.[1]  The State concedes this issue but argues that any error in admitting the confession was harmless.

We conclude that the trial court erred when it admitted EE's confession into evidence but hold that the error was harmless.  We affirm EE's conviction.

### FACTS

One morning in third period math class in their middle school, EE, DS, and CW were talking about some "shoot em' up" video games like "Call of Duty."  Verbatim Report of Proceedings, Transcript from Video CD (VRP) at 19.  EE and DS were in eighth grade and CW was in seventh grade.  EE was 14 years old at the time.  According to DS and CW, EE said something like "he was going to shoot the school," "[l]ike shoot up the school," or "[t]hat there was going to be a school shooting tomorrow."  VRP at 8, 13.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

DS said he "[d]idn't pay any attention really" or take the statement seriously because he thought EE was joking and "[b]ecause [EE] says stuff like that all the time." *Id.* at 8, 10. CW likewise said that EE had made similar statements in the past, and he did not take those seriously. This specific statement concerned CW, though, and he told the teacher. CW said: "[EE] never said it to anybody individually" and confirmed that EE muttered the statement to himself quietly. *Id.* at 17. CW said he reported the statement this time "[b]ecause I was afraid [EE] could harm a friend or myself." *Id.* at 17.

The teacher notified the principal, Jason Prather. The statement concerned Prather. Prather said he "would take that threat seriously no matter who made it" out of concern for the safety of his students and staff. *Id.* at 23. But EE also had some behavioral problems in the past. Prather interviewed all three students. EE told Prather he did not make the statement. Prather then notified law enforcement.

The Napavine chief of police, Chris Salyers, responded. After meeting with Prather, Salyers obtained statements from DS and CW. They both confirmed what EE had said. Salyers and Prather went back to Prather's office to speak with EE. They shut the door. Prather sat behind his desk and Salyers stood. Salyers did not place EE under arrest or read EE his *Miranda* warnings. Salyers did not tell EE that he was free to leave. Nor did Prather. Prather explained: "I would not have let [EE] go. He was going to stay in the office until I finished the investigation." *Id.* at 44.

Salyers then had a short conversation with EE about what happened. Salyers said: "[EE] was very quiet. He confirmed the statements that were made and basically said that he didn't take them serious and he was just kind of joking." *Id.* at 28.

Salyers arrested EE, and the State charged him with one count of felony harassment, under the threat to kill provision under RCW 9A.46.020(2)(b)(ii). The trial court held an adjudicatory hearing. It also held a contemporaneous CrR 3.5 hearing to determine the admissibility of EE's admission. For purposes of CrR 3.5, EE argued that he was in custody and he could not leave during the interrogation. He asked the court to exclude his confession to Salyers.

The trial court made oral findings of fact and concluded that there were no disputed issues of fact related to the interview of EE in the principal's office. The court reasoned EE was in the principal's office "under direction of the principal" and "nothing that the officer did escalated that or elevated that to the point where he was in custody." VRP at 57. The court concluded EE was not in custody for the purposes of *Miranda*. No written findings of fact or conclusions of law were ever prepared or entered for the CrR 3.5 issue.

The witnesses testified consistent with the facts described above. The court found EE guilty of felony harassment.

The State prepared findings of fact and conclusions of law regarding the felony harassment charge, but EE's counsel objected to some of the findings. The trial court told the parties the entry of findings and conclusions needed to be specially set on the court's calendar due to scheduling conflicts.

EE filed this appeal before the trial court entered its findings of fact and conclusions of law regarding the felony harassment charge, as required by JuCR 7.11(d). On appeal, the State moved to supplement the record with the findings of fact and conclusions of law, and we granted the motion.

3

In its findings of fact and conclusions of law, the court found that EE made the alleged threat "to return to the school with a gun and shoot students," or "shoot[]up the school tomorrow," which DS and CW heard. Resp't Mot. to Suppl. Record, at 2. CW "overheard" EE make the comment "to himself" and did not believe the statement was "directed to any one person." *Id.*, Appx. A, at 2. The court found that DS did not take the threat seriously, and CW knew EE had made similar threats before and did not take those seriously. But CW was "worried" about "what would happen if [EE] returned to school" and "was concerned enough" that he told an adult. *Id.* Based on EE's history, the principal was "concerned for the safety of his school, staff and students and contacted police." *Id.* The court found that EE confirmed in his interview with the police that he made the statement but also indicated "he was not serious about the threat." *Id.*

The court entered the following conclusion of law: "The [S]tate has proven, beyond a reasonable doubt, that: . . . On January 31, 2018; . . . [EE], knowingly and without lawful authority; . . . [d]id threaten to kill another in the future; . . . [t]he [c]ontext of the threat was such that a reasonable person would interpret the threat as a serious expression of [EE]'s intent to kill; and . . . [EE]'s words and conduct placed people in fear the threat would be carried out." *Id.* at 3.

## ANALYSIS

### A.    Custodial Interrogation

1.    The trial court's failure to enter written findings of fact and conclusions of law under CrR 3.5 was harmless

Although CrR 3.5 requires certain findings to be in writing, under *State v. Grogan*, "'failure to enter findings required by CrR 3.5 is considered harmless error if the court's oral findings are sufficient to permit appellate review.'" 147 Wn. App. 511, 516, 195 P.3d 1017 (2008) (quoting *State v. Cunningham*, 116 Wn. App. 219, 226, 65 P.3d 325 (2003)); *see also State v. France*, 121

Wn. App. 394, 401-02, 88 P.3d 1003 (2004). In *France*, the trial court entered written findings of fact and conclusions of law belatedly. *Id*. at 401. But because the trial court explicitly stated that there were no disputed facts and we reversed the trial court on its conclusion that the defendant's statements were admissible, we declined to find that the "untimely entry of findings of fact and conclusions of law prejudiced" the defendant. *Id.* at 402.

Similarly, in this case, the trial court clearly explained its reasoning in its oral ruling and plainly stated that none of the facts relevant to the CrR 3.5 issue were disputed. As in *France*, the trial court's oral ruling was sufficiently clear to permit us to review whether EE was subject to custodial interrogation. Accordingly, the trial court's failure to enter written findings of fact and conclusions of law is harmless error that does not prevent review.

2.      EE's interview was custodial

EE argues that the trial court erred when it admitted his statements to law enforcement into evidence. Specifically, he argues that he was in custody, that the officer did not provide *Miranda* warnings prior to his interrogation, and therefore, that his confession should have been excluded.[2] The State concedes this issue. We agree with EE and accept the State's concession.

"The Fifth Amendment to the United States Constitution provides criminal suspects with the right to be free from self-incrimination." *State v. Rhoden*, 189 Wn. App. 193, 199, 356 P.3d 242 (2015). Thus, "*Miranda* warnings must be given when a suspect endures (1) custodial (2)

---

[2] The parties do not dispute Salyers's law enforcement presence. Nor is there any question that the questioning constituted an "'interrogation.'" Br. of Appellant at 4; Br. of Resp't at 9; *see State v. Sargent*, 111 Wn.2d 641, 650, 762 P.2d 1127 (1988) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980)) to define interrogation for purposes of *Miranda*.

interrogation (3) by an agent of the State." *State v. Heritage*, 152 Wn.2d 210, 214, 95 P.3d 345 (2004). "Without *Miranda* warnings, a suspect's statements during custodial interrogation are presumed involuntary." *Id.* Where there has been a failure to give *Miranda* warnings, the State violates a defendant's constitutional rights if it seeks to introduce unwarned statements at trial. *United States v. Patane*, 542 U.S. 630, 641, 124 S. Ct. 2620, 159 L. Ed. 2d 667 (2004). The remedy for failure to give *Miranda* warnings is the "exclusion of unwarned statements." *Id.* at 641-42 (plurality opinion); *id.* at 644-45 (concurring opinion).

"A suspect is in custody for purposes of *Miranda* when 'a reasonable person in a suspect's position would have felt that his or her freedom was curtailed to the degree associated with a formal arrest.'" *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013) (quoting *Heritage*, 152 Wn.2d at 218). The conclusion that a suspect is not "in custody" for *Miranda* purposes is a conclusion of law. *See Rosas-Miranda*, 176 Wn. App. at 779. Appellate courts review "de novo whether the trial court's conclusions of law are supported by its findings of fact." *Id.*

Both EE and the State cite to *State v. D.R.*, 84 Wn. App. 832, 930 P.2d 350 (1997), which is factually similar to this case. DR was a 14-year-old boy called into the school principal's office and questioned about alleged incest by a plain-clothes officer. *Id.* at 834. The officer told DR that he did not have to answer questions, but he never informed DR that he was free to leave. *Id.* The appellate court held DR was subject to a custodial interrogation. *Id.* at 838.

The *D.R.* court emphasized that the "sole question" to consider in deciding if the interrogation was custodial was "whether a 14-year-old in D.R.'s position would have 'reasonably supposed his freedom of action was curtailed.'" *Id.* at 836 (quoting *State v. Short*, 113 Wn.2d 35,

41, 775 P.2d 458 (1989)). The *D.R.* court's conclusion that the interrogation was custodial hinged on the fact that no one told DR he was free to leave. *Id.* at 838. The court identified three other important factors: DR's youth, the "naturally coercive nature of the school and principal's office environment for children of his age," and the "obviously accusatory nature" of the interrogation. *Id.*

The State correctly concedes that EE was in custody when Salyers interrogated him in Prather's office. Law enforcement questioned EE, who was 14, about an accusation that he had violated the law. The questioning took place in the principal's office. Here, as in *D.R.*, the sole question is whether a reasonable 14-year-old in EE's position would have felt free to terminate the interrogation in Prather's office. *D.R.*, 84 Wn. App. at 836. Prather's office door was shut. Although Salyers did not place EE under arrest, neither Salyers nor Prather told EE that he was free to leave.

To the extent the trial court reasoned that EE was not in custody because it found that Prather, rather than Salyers, was responsible for preventing EE from leaving the office, we conclude that under *D.R.*, that distinction is immaterial to whether or not EE was in custody. *See Id.* at 836. Therefore, the fact that the principal, rather than the law enforcement officer, ordered EE to go to and remain in his office does not change the custodial nature of the interview under the facts of this case.

We conclude that a reasonable 14-year-old in EE's position would have felt that his "'freedom was curtailed to the degree associated with a formal arrest.'" *See Rosas-Miranda*, 176 Wn. App. at 779 (quoting *Heritage*, 152 Wn.2d at 218); *see also D.R.*, 84 Wn. App. at 836. Therefore, EE was in custody, and Salyers was required to advise EE of his *Miranda* rights before

interrogating him. In sum, we accept the State's concession and hold that the trial court erred when it determined EE was not in custody and admitted his confession into evidence.

B.    Harmless Error

EE argues that the admission of his confession was prejudicial because the remaining untainted evidence was not sufficient to convict him of felony harassment. The State argues that the admission of EE's confession was harmless error. Viewing the confession in light of the entire record and its overall significance, we agree with the State and conclude that the erroneous admission of EE's confession was harmless.

1.    Elements of felony harassment under RCW 9A.46.020

Under RCW 9A.46.020(1)(a)(i), (b), a person commits harassment if, "[w]ithout lawful authority, the person knowingly threatens" to "cause bodily injury immediately or in the future to the person threatened or to any other person," and "by words or conduct places the person threatened in reasonable fear that the threat will be carried out." The State charged EE under the statute's felony "threat to kill" provision, which provides that the threat amounts to a class C felony if it is a threat to kill "the person threatened or any other person." RCW 9A.46.020(2)(b)(ii).

To comply with the First Amendment, a conviction for felony harassment based upon a threat to kill also requires that the State satisfy a constitutional dimension by proving a true threat was made in addition to proving the statutory elements of the crime. *State v. Kilburn*, 151 Wn.2d 36, 54, 84 P.3d 1215 (2004). A true threat occurs only when a reasonable person in the defendant's position could have foreseen that the listener would interpret the statement as a serious threat. *See State v. Trey M.*, 186 Wn.2d 884, 908, 383 P.3d 474 (2016). "A true threat is a serious threat, not one said in jest, idle talk, or political argument." *Kilburn*, 151 Wn.2d at 43. Whether a statement

was a true threat or a joke is considered "in light of the entire context." *Id.* at 46. Our Supreme Court has recognized that "[t]he person to whom the threat is communicated may or may not be the victim of the threat." *State v. J.M.*, 144 Wn.2d 472, 488, 28 P.3d 720 (2001).

2.      Admission of EE's statement was harmless error

"[A]dmission of an involuntary confession obtained in violation of *Miranda* is subject to treatment as harmless error." *State v. Reuben*, 62 Wn. App. 620, 626, 814 P.2d 1177 (1991). The test for whether a constitutional error is harmless is whether this court is "'convinced beyond a reasonable doubt that any reasonable trier of fact would have reached the same result despite the error.'" *State v. Scherf*, 192 Wn.2d 350, 370, 429 P.3d 776 (2018) (quoting *State v. Thompson*, 151 Wn.2d 793, 808, 92 P.3d 228 (2004)); *see also Reuben*, 62 Wn. App. at 626 (applying the constitutional harmless error test to the improper admission of a confession obtained in violation of *Miranda*).

To make this determination, we consider "if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985); *see also Scherf*, 192 Wn.2d at 371. The State bears the burden of overcoming the presumption that this constitutional error was prejudicial. *State v. Nysta*, 168 Wn. App. 30, 43, 275 P.3d 1162 (2012). The Supreme Court recently elaborated that "this inquiry requires us to find the error harmless if, in light of the entire trial record, we are convinced that the [factfinder] would have reached the same verdict absent the error." *State v. Romero-Ochoa*, 193 Wn.2d 341, 348, 440 P.3d 994, *remanded*, 2019 WL 5960652 (2019). Under this test, we look to the "overall significance of the erroneously admitted or excluded evidence in this context (e.g., whether it was cumulative or corroborated, or consistent with the defense theory)." *Id.*

Here, suppression of EE's confession would not have changed the result of the trial. Other witnesses testified that EE made the statement, and he did not contest this fact at trial. Instead, EE argued that he was only joking, which was consistent with Salyers's testimony about what EE told him. The overall significance of the improperly admitted confession was minimal and cumulative of properly admitted evidence. As a result, we conclude that the improper admission of EE's confession was harmless error.

C. <u>Trial Court's Delay in Entering Written Findings of Fact and Conclusions of Law, as Required by JuCR 7.11(d)</u>

EE also asks us to reverse and remand on the basis of the trial court's failure to enter findings of fact under JuCR 7.11(d). We decline to grant this relief.

Since EE's brief was filed, we have granted the State's motion to supplement the record with the trial court's findings of fact and conclusions of law supporting EE's conviction for felony harassment. Thus, the issue is moot. *State v. Gentry*, 125 Wn.2d 570, 616-17, 888 P.2d 1105 (1995). Additionally, to the extent EE argues his conviction should be dismissed entirely due to the trial court's delay in entering the findings of fact and conclusions of law, reversal is not appropriate unless EE can show actual prejudice. *State v. Head*, 136 Wn.2d 619, 624-25, 964 P.2d 1187 (1998).

The court in *Head* explained that "actual prejudice" may exist where written findings and conclusions were originally missing and "where there is strong indication that findings ultimately entered have been 'tailored' to meet issues raised on appeal." *Id.* EE has not shown tailoring or other actual prejudice. Because the findings of fact and conclusions of law were "ultimately entered" and there is no evidence of bad faith or "tailoring," EE has not met his burden of showing prejudice from their delayed entry.

10

No. 51668-3-II

We conclude that the trial court's failure to timely enter findings of fact and conclusions of law is moot.

CONCLUSION

EE's confession was the product of an unlawful custodial interrogation, and we hold that the trial court erred in admitting it. However, EE has not shown that the admission of this statement prejudiced him under the overwhelming untainted evidence test. Accordingly, the admission of the statement was harmless error. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, C.J.

Melnick, J.

11