IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 79455-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOSEPH ANTHONY BALLOU, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Joseph A. Ballou seeks reversal of his conviction for one count of possession of a stolen motor vehicle. He argues that his intoxication prevented his ability to knowingly, intelligently, and voluntarily waive his Miranda[1] rights. He also argues that the trial court erred in admitting prejudicial prior conviction evidence. Because substantial evidence supports the trial court's finding that Ballou's waiver was valid, and the court acted within its discretion in admitting prior conviction evidence, we affirm the admission of his statements and his conviction.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Citation and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

Daniel Perez Lopez was the owner of a 1988 Toyota Camry. The Camry had been stolen from Perez[2] in a previous unrelated incident, and it was returned with its ignition system damaged and its radio missing. Perez had to use a flathead screwdriver to start the car since the first vehicle theft.

On the evening of October 3, 2017, Perez noted that the Camry was parked and locked outside his residence. The following morning, Perez's son noticed that the car was missing. Perez called 911 and reported the car stolen.

Later that afternoon, while conducting an area check, Deputy Daniel Johnson observed a Toyota Camry in the parking lot of a church in Burien. He ran the license plate and discovered that the vehicle had been reported stolen. As Johnson approached the vehicle, he observed a man later identified as Ballou asleep in the front seat. After backup officers arrived, Johnson approached the car and announced "Police." Ballou did not respond, so Johnson opened the passenger door and announced "Police. Get out of the car." Johnson assisted Ballou from the car, handcuffed him, placed him in a patrol vehicle, and read him his Miranda rights.

After Ballou acknowledged that he understood his rights, he began to speak to Johnson. Ballou said that his cousin picked him up in the Toyota Camry from a nearby restaurant at around 10:00 pm the previous evening, gave him a ride to the church parking lot, and left. Ballou then fell asleep in the car. Ballou said he

---

[2] Utilization of the patrilineal last name (the first of two family names) as a primary identifier is a common naming convention in Latinx and Spanish-language dominant communities. Further, Perez self-identified in this manner during his sworn testimony at trial, which was provided with the assistance of a certified Spanish court interpreter, as such we will follow that practice here.

thought it was odd that his cousin had a car. He also thought it was odd that the ignition was "popped" and the radio was missing. Deputy Tanner Owens, the second officer to arrive on the scene, asked Ballou whether he had been read his rights and whether he wanted to speak. Ballou answered yes to both questions, then gave Owens a brief overview of the same story he told to Johnson.

Johnson observed that the ignition was damaged in a way that made it possible to start the car without a factory key. The radio was missing and the steering column appeared to be held together with tape. There was a bent coat hanger in the back seat and a backpack in the front seat. Ballou acknowledged that the backpack was his. The backpack contained pliers, screwdrivers, and nine different car keys.[3]

The trial court conducted a CrR 3.5 hearing to determine the admissibility of Ballou's statements to police. Ballou testified as follows:

> [DEFENSE COUNSEL]: And do you recall any contact—well, first of all, do you remember Deputy Johnson from your contact with him on August 4th?
> [BALLOU]: I don't.
> [DEFENSE COUNSEL]: So you don't recall him. Do you recall if he gave you [Miranda] warnings?
> [BALLOU]: I don't because I was woken up in the car.
> [DEFENSE COUNSEL]: Okay. So when you woke up, what was your state of mind?
> [BALLOU]: I was groggy. I wasn't really thinking anything.
> [DEFENSE COUNSEL]: Were you under the influence?
> [BALLOU]: Yes.
> [DEFENSE COUNSEL]: Do you recall any contact with Deputy Owens?
> [BALLOU]: I don't.
> [DEFENSE COUNSEL]: Do you recognize him this morning?
> [BALLOU]: I didn't.
> [DEFENSE COUNSEL]: So you don't recall him reading you your [Miranda] warnings?

---

[3] Evidence of drug paraphernalia was excluded at trial.

[BALLOU]: I don't.

Following the hearing, the trial court entered findings of fact and conclusions of law regarding Ballou's motion to suppress his post-Miranda statements. In pertinent part, the court found:

> 16. Mr. Ballou has an extensive history of interactions with police, including numerous arrests, and the following convictions: Taking a Motor Vehicle Without Permission in the Second Degree (2015, 2013 x2, 2012, 2011); Residential Burglary (2013); Robbery in the First Degree (2009); Vehicle Prowl in the Second Degree (2013, 2012, 2011); Theft in the Third Degree (2013 x2, 2011, 2007); Attempt to Elude (2012); Assault in the Fourth Degree (2010); and Obstruction of Justice (2010). Experience related to arrests for the above offenses would tend to indicate that one is familiar with the arrest process and able to provide a knowing, intelligent, and voluntary waiver of Miranda rights.
>
> …
>
> 17. Mr. Ballou argued that his waiver of his Miranda rights was not knowingly, intelligently and voluntarily given because he had just been awakened and was under the influence of drugs or alcohol. However, no evidence of intoxication was presented other than that he was sound asleep when contacted and the findings of drug use paraphernalia in his backpack. Accordingly, the Court determined that Mr. Ballou's waiver was knowing, intelligent and voluntary.

Based on its findings of fact, the court concluded that Ballou's waiver was knowing, intelligent, and voluntary. Over Ballou's objection, the court also admitted evidence concerning a prior conviction of Ballou in which he drove a stolen car with a damaged steering column.

At trial, Johnson and Owens testified regarding Ballou's statements. Ballou did not testify or present evidence at trial. The jury convicted Ballou as charged, and he now appeals.

ANALYSIS

I.    Miranda Waiver

Ballou argues that the trial court erred in admitting his statements to police because he did not make a knowing, voluntary, and intelligent waiver of his Miranda rights. This is so, he contends, because he was under the influence of an unspecified substance and has no recollection of his arrest. We disagree.

"The State bears the burden of showing a knowing, voluntary, and intelligent waiver of Miranda rights." State v. Athan, 160 Wn.2d 354, 380, 158 P.3d 27 (2007). A trial court properly admits a defendant's statements where the court's findings and the record support the court's conclusion that the defendant was informed of his Miranda rights and knowingly and intelligently waived those rights before making the statements. State v. Reuben, 62 Wn. App. 620, 624, 814 P.2d 1177 (1991). We examine the totality of the circumstances to determine if the waiver was made voluntarily and with "'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" State v. Bradford, 95 Wn. App. 935, 944, 978 P.2d 534 (1999) (quoting Moran v. Burbaine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). Factors we may consider include "the defendant's physical condition, age, experience, mental abilities, and the conduct of the police." State v. Cushing, 68 Wn. App. 388, 392, 842 P.2d 1035 (1993). Intoxication does not automatically prevent a waiver of Miranda rights, but evidence of intoxication is a factor to be considered in determining the voluntariness of the waiver. Reuben, 62 Wn. App. at 625-26. "We will not disturb a trial court's conclusion that a waiver was voluntarily made if the

5

trial court found, by a preponderance of the evidence, that the statements were voluntary and substantial evidence in the record supports the finding." Athan, 160 Wn.2d at 380.

Here, substantial evidence supports the trial court's finding that Ballou's waiver was knowing, intelligent, and voluntary. Even if Ballou was under the influence of an unknown substance, there was no evidence that he was significantly impaired. Ballou affirmatively stated that he understood his rights, and his responses to police questions were cogent and detailed. There was no evidence that Ballou had difficulty understanding what was happening or responding to questions. Ballou's later assertion that he had no memory of these events does not prove that his waiver was involuntary at the time he made it. See State v. Reuben, 62 Wn. App. at 625 (defendant's otherwise voluntary statement not tainted by later claim of amnesia). Ballou's waiver was valid under the totality of the circumstances.

Ballou notes that Johnson observed that he "seemed sleepy" and was slow to respond to questions, and that Johnson speculated that Ballou may have used a "downer" such as heroin. But being under the influence of a substance is not necessarily synonymous with intoxication. Moreover, Johnson provided this testimony at trial, after the court had already made its CrR 3.5 ruling.

Ballou, pointing to his own testimony at the CrR 3.5 hearing, further asserts that substantial evidence does not support the trial court's finding that "no evidence of intoxication was presented other than that [Ballou] was sound asleep when contacted and the finding of drug use paraphernalia in his backpack." But the

court's oral ruling, which was expressly incorporated into its findings, noted that Ballou's claim was not corroborated by police testimony. It is apparent that the trial court considered Ballou's claim and found it unpersuasive. Any error in the phrasing of this finding was harmless. "[A]n erroneous finding of fact not materially affecting the conclusions of law is not prejudicial and does not warrant a reversal." State v. Caldera, 66 Wn. App. 548, 551, 832 P.2d 139 (1992).

II.     Admission of ER 404(b) Prior Bad Act Evidence

Ballou argues that the trial court erred in admitting evidence that he had previously been convicted of possession of a stolen motor vehicle with a damaged steering column. We review the trial court's application of a rule to admit or exclude evidence for abuse of discretion. State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

Evidence of a defendant's prior bad acts is not admissible to show that the defendant has a propensity to commit crimes, but it may be admissible for some other proper purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. ER 404(b); State v. Gunderson, 181 Wn.2d 916, 921, 337 P.3d 1090 (2014). ER 404(b) must be read in conjunction with ER 403. State v. Smith, 106 Wn.2d 772, 775, 725 P.2d 951 (1986). "ER 403 requires exclusion of evidence, even if relevant, if its probative value is substantially outweighed by the danger of unfair prejudice." Id. at 776 (emphasis omitted). "Before admitting evidence of other wrongs under ER 404(b), a trial court must (1) find that a preponderance of evidence shows that the misconduct occurred; (2) identify the purpose for which the evidence is being

7

introduced; (3) determine that the evidence is relevant; and (4) find that its probative value outweighs its prejudicial effect." State v. Baker, 89 Wn. App. 726, 731-32, 950 P.2d 486 (1997). In close cases, prior bad acts evidence should be excluded. State v. Wilson, 144 Wn. App. 166, 176, 181 P.3d 887 (2008).

Here, the State sought to introduce the challenged prior conviction evidence to establish that Ballou knew that the Camry's damaged steering column was indicative of theft. We disagree. After conducting the required ER 404(b) analysis on the record, the trial court ruled that this evidence was admissible to show that Ballou knew the Camry was stolen. In so ruling, the court stated that although there is a danger of prejudice, the probative value of the evidence was "particularly strong" given that knowledge is an element of possessing a stolen vehicle.[4]

Ballou asserts that this evidence was irrelevant because the vehicle in that case was described as having "damage to the steering column" whereas the Camry in this case had a damaged ignition. We agree with the State that such damage is functionally synonymous in older model cars. The fact that similar damage existed in the Camry makes it highly relevant to show Ballou's knowledge that the car was stolen.

He further contends that any probative value was substantially outweighed by its prejudicial effect. We disagree. Although this evidence carried some risk of prejudice, it did not include unnecessary details and was not highly inflammatory. And the court properly gave an oral limiting instruction at the time the evidence

---

[4] A person commits the crime of possession of a stolen vehicle "if he or she [possesses] a stolen motor vehicle." RCW 9A.56.068. Although the statute does not codify a mens rea element, the State must show that the defendant had actual knowledge the car was stolen. State v. Allen, 182 Wn.2d 364, 374, 341 P.3d 268 (2015).

was admitted and again in a separate written instruction.  Jurors are presumed to follow instructions. <u>State v. Mohamed</u>, 186 Wn.2d 235, 244, 375 P.3d 1068 (2016). The trial court did not abuse its discretion in admitting this evidence.

Affirmed.

WE CONCUR:

Leach, J.

Appelwick, J.